In the Matter of the Estate of J. J. TOLERTON, Deceased.

**DEEDS: Extent of Interest Conveyed—How Determined—Revocabil-**
**1, 4 ity—Wills.** Whether a grantor's deed irrevocably carried all his interest in real estate, or whether he intended the deed to be merely testamentary and therefore revocable, must be determined from the terms of the deed. On such question the fact that the grantor, long after the execution and delivery of the deed, made a will, attempting therein to dispose of the land conveyed in the deed, is wholly immaterial and without bearing. (Sec. 2914, Code.)

**DEEDS: Revocability—How Determined—Unexpressed Intention.**
**2** The right of a grantor to revoke a deed to land may be shown by language therein retaining an interest in the land, other than the mere use or enjoyment. But a secret or unexpressed intention on the part of grantor to reserve the right to revoke is

unavailing. The intention to reserve the right of revocation must affirmatively appear from the instrument itself.

**DEEDS:** Absolute? (or) Testamentary?—Absolute? (or) Revocable? —Vested Title—Wills. A deed executed, delivered and accepted, vesting instant title in grantee, with no reservation of right in grantor except an income, is beyond grantor's recall.

PRINCIPLE APPLIED: A. The grantor in instant deed, at the time of the execution, had two daughters. The material outline of the deed is as follows:

1. A recital of (a) the grantor's ownership of real and personal property, (b) the care it required, (c) his age and health, (d) his desire to be free from the burden of such care, (e) his desire to make provision for the disposition of his estate, and (f) the receipt of ''one dollar and other good and valuable considerations.''

2. The *habendum:* ''Do hereby sell, assign, transfer, and convey unto . . . Trust Co. . . . trustee and its successors in trust . . . in trust, however, for the persons and purposes hereinafter named and appointed and with the powers and duties hereinafter enumerated and none other.'' The trustee at once accepted the trust.

3. The property conveyed or granted ($100,000 in value) consisted of all the real estate and personal property of grantor ''except only my personal apparel and household effects.''

4. The trustee was ''to have and to hold'' the property ''from the execution of the deed until the appointment and qualification of an executor or administrator of the estate of grantor'' and no longer.

5. Most ample and sweeping powers were granted to the trustee in the management of the property.

6. Grantor reserved a reasonable (but unnamed) amount out of the net income for his personal needs ''and current religious contributions,'' the balance to be reinvested.

7. Contained this clause: ''Art. 4. At and after my death said trust property shall vest in and become the absolute property of my legal heirs then surviving as provided by the laws of inheritance of the state of Iowa.''

8. Bond exacted of trustee ''for the use and benefit of this grantor and the *cestuis que trustent* under this instrument.''

9. Books of account exacted of trustee. The ''grantor or either of his children'' could always demand (a) an inspection of the books of the trustee and (b) receive statement of the condition of the trust estate.

10. Contained this clause: ''Art. 7. It shall be the duty

of the trustee to maintain . . . and enhance to the best ad-vantage . . . the trust estate and remainder in fee hereby created.''

11. A vacancy in the trusteeship "shall be filled by myself (grantor) and my two daughters'' (naming them).

12. An existing "power of attorney" from grantor to the same company chosen as trustee was revoked.

B. Ten months after the execution, delivery and acceptance of the "deed," grantor made a will, disposing of the same prop-erty covered by the "deed." In this will he refers to having executed a conveyance to said trustee of all his property "for the purpose of relieving myself from the care thereof *and I now hereby revoke and annul said trust.*"

*Held,* the title (a) vested instanter under the deed in the trustee, (b) remained so vested until *after* the death of grantor and (c) then passed absolutely under the deed to grantor's heirs at that time, and that the two daughters had a valid, subsisting, beneficial interest in the property from the delivery of the deed.

*Appeal from Black Hawk District Court.*—HON. FRANKLIN C. PLATT, Judge.

WEDNESDAY, FEBRUARY 10, 1915.

APPLICATION for the construction of a trust conveyance. The two daughters, who are the only heirs of the grantor in such conveyance, claim that the writing operated to vest his estate in them. One of the legatees, Cornell College, of Mt. Vernon, claims that it did not, but says that his estate should be distributed as provided by his will. The trial court found in favor of the heirs, holding that the property passed to them under the deed of trust. The college appeals.—*Affirmed.*

*E. B. Soper, W. H. Merner,* and *E. A. & W. H. Morling,* for appellant.

*Howe & Lyon* and *J. B. Newman,* for appellees.

PRESTON, J.—Deceased, J. J. Tolerton, was a widower. On May 24, 1911, he executed the trust deed in question, which will be set out later. On March 27, 1912, he executed his will. He died June 8, 1912. The trust was accepted in

writing by the trustee May 29, 1911. The estate consisted of real estate and personal property of the value of about $100,-000.00, a part of which is in Black Hawk County, Iowa, and the remainder in South Dakota. The trust conveyance was filed for record, and recorded soon after the execution of the deed, in the counties in this state and South Dakota where the real estate was situated. The trustee qualified and entered into the possession of all the property covered by the trust instrument, and upon the discharge of its duties as trustee, and so continued until the death of the grantor, when it turned over and delivered the property to the administrators of his estate. The daughters petitioned for letters of administration, and such letters were issued to their husbands, who at once qualified and entered upon the discharge of their duties. The will was filed for probate, and the daughters and the administrators filed objections thereto on the ground of mental incapacity of deceased to make a will. Demand was made by the heirs upon the administrators that the property covered by the trust conveyance be delivered to them as their own property, which the administrators refused to do. The heirs then made application for an order to require the administrators to deliver the property to them. Thereupon, the administrators asked the court for instruction and direction in the premises. The claim of the college, as legatee under the will, was denied by the heirs and the administrators. It was stipulated, however, that for the purposes of this case it should be considered that the will had been duly probated. The Methodist Episcopal Church at Cedar Falls, a legatee under the will, is not a party to this controversy and, it appears, has made no claim to its legacy. The personal apparel and household effects exempted from the provisions of the trust deed are not of sufficient value to pay the expenses of administration of the estate and the legacy claimed by Cornell College. The question is, then, whether the heirs take under the trust conveyance the property covered thereby, or whether it

was revoked by the will subsequently made; that is to say, whether the trust deed or the will prevails.

The trial court decreed that the heirs are the unqualified owners of all the property covered by the trust deed; that the college has no interest therein or thereto; that the administrators are not entitled to said property, or the possession thereof, and directed the administrators to turn the property over to the heirs. It provided, however, that the property not covered by the trust conveyance, belonging to the estate of deceased, now in the possession of the administrators, should not be affected. As to the remedy, no question is raised as to the right of the court to direct the administrators to deliver the property to the heirs. The trust deed is as follows:

## "EXHIBIT 'A'.

"Whereas the grantor herein is the owner of certain real and personal property which requires considerable time and attention for its proper management and conduct, and,

"Whereas, said grantor by reason of his age and the condition of his health desires to be free from the burden of such affairs, and,

"Whereas, said grantor further desires at this time to make provision for the disposition of his estate: Now, Therefore,

"Know All Men by These Presents: That, I, J. J. Tolerton of the City of Cedar Falls, in the County of Black Hawk, and State of Iowa, for and in consideration of one Dollar ($1.00) and other good and valuable consideration in hand paid, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer, and convey unto the Cedar Falls Trust Company of Cedar Falls, Iowa, a corporation duly organized and existing under and by virtue of the laws of the State of Iowa, 'Trustee' and its successors in trust, the following described real and personal property, to wit:

"The South One-half (½) of a certain Lot or Block of

ground in the City of Cedar Falls, in the County of Black Hawk, and State of Iowa, bounded on the North by Tenth (10) Street, on the East by Franklin Street, on the South by Eleventh (11) Street, and on the West by Tremont Street, also, the North-west one-fourth (¼) of Section Fourteen (14), Township Eighty-nine (89), North of Range Fourteen (14), West of the 5th P. M. Iowa, except three (3) acres in the North-east corner thereof; also, the West One-half (½) and the South-east One-fourth (¼) of Section Twenty (20), Township One Hundred and Twenty (120), Range forty-nine (49), in the County of Grant, and State of South Dakota; and, also, all money, notes, mortgages, shares of stock in corporations, policies of insurance, both fire and life and the benefits and proceeds thereof or to be derived therefrom, together with all other property, property rights and benefits of whatever kind or character and wherever located, owned or possessed by me, together with all and singular, the rents, issues, dividends and profits thereof, and all other rights appendant and appurtenant in and unto said property, or arising or issuing therefrom, save and except only my personal apparel and household effects.

"In Trust, however, for the persons and purposes hereinafter named, and appointed, and with the powers and duties hereinafter enumerated and set forth, and none other.

"To Have and to Hold, the same unto the said Cedar Falls Trust Company and to its successors in trust for and during the whole of the period hereinafter described and designated as 'the trust period.'

"Article 1. The trust period above referred to is described and designated as follows: It shall commence upon the execution of these presents and shall continue and exist during the life of this grantor and until an executor or administrator shall have been duly appointed, and shall have qualified as provided by law, as the executor or administrator of the estate of this grantor, and no longer.

"Article 2. (a) During the whole of the trust period

aforesaid, said trustee shall have full power and authority, and it shall be its duty to take, possess, and have charge of said trust property, to lease and invest the same, and to demand and receive and receipt for the rents, issues, dividends and profits arising and which may be had therefrom, and to disburse, dispose of, and invest or re-invest such rents, issues, and profits as hereinafter provided.

"(b) To bring, maintain and defend actions at law, in equity or otherwise involving, growing out of, or in any manner affecting said property or property rights.

"(c) To maintain and improve said property as may be to the best advantage of the trust estate and of the remainder in fee.

"(d) To pay all taxes, liens, incumbrances, and claims upon and against said property, or any of it, whether now existing or hereinafter arising or created.

"(e) To keep and maintain fire insurance on the buildings on said real estate in a sum equal to Sixty-five (65) per cent of the value of such buildings.

"(f) To do any and all acts and things essential and proper in the careful, frugal and businesslike management and conduct of said property.

"Article 3. For and during the life of this grantor the net income from said trust property shall be paid out and disbursed by said trustee as follows:

"(a) For the support, maintenance and care of this grantor and to provide him with a reasonable and proper amount of money for his personal needs and for his current religious contributions.

"(b) The residue and remainder of such rents, issues, dividends and profits shall be invested by the trustee as authorized and provided by the statutes of the State of Iowa for the investment of trust funds at the best and most advantageous rate of interest obtainable.

"Article 4. At and after my death said trust property shall vest in and become the absolute property of my legal

heirs then surviving as provided by the laws of inheritance of the State of Iowa.

"Article 5. Before entering upon the discharge of the duties of trustee provided in this instrument the trustee herein named and its successor or successors in trust, shall give and furnish a good and sufficient bond in the penal sum of Twenty Thousand Dollars ($20,000.00) for the use and benefit of this grantor and the *cestuis que trustent* under this instrument, with the usual and ordinary covenants for the faithful discharge of the duties and obligations of such trustee, the expense of such bond in the event a surety company bond is given, to be borne and paid as an expense of the trust estate.

"Article 6. All personal property coming into the hands of the trustee of the trust estate hereby created shall be receipted for by the trustee on receiving such property, and the trustee shall, when requested by this grantor or either of his children, furnish a full and complete inventory of all the personal property belonging to this estate then in the hands, custody, or control of the trustee, and in addition thereto, the trustee shall, at all times, keep or cause to be kept, full, complete, and perfect books of account in which shall be recorded at the time different transactions take place in a businesslike manner, and so as to disclose the nature of each item thereof, all of his receipts and disbursements, and all of his accounts and transactions in connection with the trust property belonging to the trust estate hereby created, and such books of account shall, at all times during business hours, be open to the inspection of this grantor and each of his children and to the accredited agent or representative of each or any of said persons.

"Article 7. It shall be the duty of the trustee to maintain, protect, sustain and enhance, to the best advantage of the trust estate, and of the remainder in fee, the trust estate and remainder in fee hereby created.

"Article 8. The trustee of the estate hereby created shall receive as compensation for services rendered as such trustee,

the reasonable value of such services, regard being had to the kind and character of the property, the amount of labor, and responsibility required and my past and present relations to such trustee. Such trustee may, in the exercise of sound discretion, employ such assistance as is actually necessary in the proper discharge of the duties arising or existing under and by virtue of this instrument and the person or persons so employed by such trustee, shall have and receive fair and reasonable compensation for the services so rendered.

"Article 9. After the execution of this instrument, the trustee herein named shall have a reasonable period of time within which to accept or reject the trust hereby created, and if it accepts such trust a reasonable period of time within which to qualify as such trustee, and in the event of its neglect or refusal to accept such trust, another trustee shall then be selected in the manner provided herein, and such trustee or any other trustee so selected shall in turn have a reasonable period of time within which to accept or reject such trust, and if he or it accepts a reasonable period of time within which to qualify as such trustee.

"Article 10. In the event of a vacancy in the trusteeship provided for herein, such vacancy shall be filled by myself and my two daughters, namely: Mary Elizabeth Aldrich and Margaret Ernestine Thompson, or those surviving, each having an equal voice therein.

"Article 11. In view of the execution of this instrument which covers and disposes of the property mentioned and described in a certain power of attorney made, executed and delivered by me to the Cedar Falls Trust Company of the City of Cedar Falls, County of Black Hawk, and State of Iowa, the trustee herein named on or about the Twelfth day of December, A. D. 1910, and also of certain other property in addition thereto, I now hereby revoke, cancel, annul, and set aside said power of attorney as of the date and time of the execution and completion of this trust conveyance.

"In Witness Whereof, the grantor above named has here-

unto subscribed his name in the City of Cedar Falls, in the County of Black Hawk, and State of Iowa, this 24th day of May, A. D. 1911.

"(Signed) J. J. TOLERTON."

In Triplicate.

(Certificate of acknowledgment in due form.)

## "ACCEPTANCE OF TRUST.

"Now on this 29th day of May, A. D. 1911, the Cedar Falls Trust Company of the City of Cedar Falls, in the County of Black Hawk, and State of Iowa, in pursuance of a resolution of its Board of Directors regularly convened for said purpose, hereby accepts the trust created by the above and foregoing trust conveyance.

"In Witness Whereof, the said Cedar Falls Trust Company has caused this instrument to be executed in its behalf by its President and to be attested by its Secretary with its corporate seal on the day and date last above written.

"(Signed) CEDAR FALLS TRUST Co.
"Attest: By H. S. Gilkey, President.
"(Signed) F. B. MILLER,
"Secretary."

The will of deceased recites:

"I have heretofore conveyed to the said The Cedar Falls Trust Company all my property, both real and personal, for the purpose of relieving myself from the care thereof, and I now hereby revoke and annul said trust and direct that said The Cedar Falls Trust Company shall hold said property under appointment herein as executors and under that of the court for the purpose of closing up my said estate."

It gives $1,500.00 to the Cedar Falls Trust Company in trust for the Methodist Episcopal Church, of Cedar Falls, Iowa, for certain purposes, and to one daughter a one hundred and fifty-seven-acre farm in Black Hawk County, and to the

other daughter four hundred and eighty acres in South Dakota; provides that the bequests to his daughters shall be made as nearly equal as possible, and how this shall be done; gives to the college $10,000.00, and provides that after the costs and expenses are paid, the remainder be divided equally between his daughters.

The case has been well presented. The arguments are elaborate and many cases cited from this and other states. The cases cited from other states are not very helpful because of our statutes and our own decisions on the subject.

1. Appellant argues that the will is evidence that the testator regarded and intended the deed as testamentary and revocable. But we think the intention of the deceased at the time of the execution of the deed should be determined by its provisions. It was so held in the recent case of *McCash v. Derby,* 158 Iowa 371, where the court said:

1,4. DEEDS: extent of interest conveyed: how determined: revocability: wills.

"So far as the title to this particular lot is concerned, the will of Mary McCash is quite foreign to the case. The will of Grace is still more so. The beneficiaries of the trust deed will take the title through the trust deed and through nothing else. In the trust deed before us the trust was fully declared and its conditions specified. No power of revocation was reserved, nor was any interest in the property retained. True, one contingency was specified wherein it would become the duty of the trustee to convey the property to the grantor, but such contingency never happened. Whichever of the specified contingencies should happen, the duty of the trustee was fixed and irrevocable by the terms of the deed itself, and was in no manner subject to the will or direction of the grantor. It is conceded of record that the grantor parted with possession of the property at the time of the conveyance of the life estate to Grace, and that she never exercised any dominion over the same thereafter. The effect of her trust

deed was to pass from her the title to the remainder and to transfer it to the trustee for the purpose specified (citing cases). In order, therefore, to ascertain the identity of the proposed grantees or beneficiaries to whom the trustee must convey, we must be governed by the provision of the trust deed itself.''

In the opinion in the *McCash* case a number of authorities are cited which are relied upon by both parties in the present case. We shall refer to some of them later in the opinion.

2. Deeds: revocability: how determined: unexpressed intention.

2. It is contended by appellant that, so far as the instrument in question provided for the management of his property and affairs, it was in legal effect merely a power of attorney, and revocable at pleasure, citing cases from other jurisdictions.

It will be observed from a reading of the trust deed that the grantor had previously given a power of attorney to the same company he later named as trustee, and for the same property. This was revoked in the trust deed, so that it would appear that it was his purpose to treat the trust deed as more than a power of attorney. It is possible, even probable, that because of his advanced age and weakened physical condition he had in mind that his mental faculties would become impaired and that he intended to dispose of his estate by the trust deed in question while he was still competent; but, to relieve himself from the care of the property, he appointed the trustee to manage it during his lifetime.

It is also contended by appellant that the instrument made provision for the disposition of his estate after his death by providing that at and after his death the property should vest in his legal heirs; that it conveyed no interest vesting until his death, conveyed no estate to any trustee for the claimants, was testamentary, and as such, revocable. And again they cite some of the cases referred to in the opinion

in the *McCash* case, and others, as well as cases from other states. Counsel for appellant concede, however, in argument that: "It was undoubtedly the intention of the grantor to invest the trustee with the title for his lifetime." But they say there was nothing to show that it was his intention to put it beyond his power to dispose of what he calls the remainder in fee by will.

But it is contended by appellees, and it seems to be the rule, under Sec. 2914 of our Code, and our decisions, that it must appear from the instrument that there was an intention upon the part of the grantor to reserve the right of revocation; otherwise no such right remained in the grantor. Among the cases cited on this proposition are the following Iowa cases: *Lewis v. Curnutt,* 130 Iowa 423, 436; *Schollmier v. Schoendelen,* 78 Iowa 426; *In re Podhajsky,* 137 Iowa 742; *Tucker v. Tucker,* 138 Iowa 344; *McCash v. Derby,* 158 Iowa 371; *Jones v. Nicholas,* 151 Iowa 362, 367; *Forney v. Remey,* 77 Iowa 549, 552; *Craven v. Winter,* 38 Iowa 471, 479.

In determining the right to revoke a deed, the test is, whether any interest in the property itself has been retained, as distinguished from the mere use or enjoyment. *Jones v. Nicholas,* 151 Iowa 362, 368; *Martin v. Martin,* 170 Ill. 18; *McNally v. McAndrews,* 98 Wis. 62.

3. It is said by counsel for appellant that the grant in the deed is in trust, and the *habendum* is for and during the trust period, and that the trust period is specifically designated as from the execution of the instrument until the appointment and qualification of an executor or administrator; that the trustee at the expiration of the trust period does not convey either to the heirs or anyone else; that its estate simply terminates; that the heirs take, if they take at all, not from the trustee, but under the instrument, distinct from the trust; that the trust estate is distinct from the remainder in fee. They also say that while, under the statute, in the absence of *habendum,* or words of trust, or

3. DEEDS: absolute? (or) testamentary?: absolute? (or) revocable?: vested title: wills.

other similar expression of purpose, the instrument would operate as a conveyance of the fee, the *habendum* operates to limit and restrict the estate granted to one for the life of the grantor and until the qualification of the executor or administrator; that the authority of the trustee ended with the trust period, and the executor's duties, if he appointed any, and the administrator's duties, if he did not, then began; that at and after his death the trust property was to vest in and become the property of his legal heirs, and that his heirs, if they take, take under the instrument, and not under or through the trustee; that, therefore, the decedent's right to dispose of his estate by will was not relinquished, but retained. On this proposition counsel cite: *Beedy v. Finney,* 118 Iowa 276; and *Prindle v. Iowa Soldiers' Orphans' Home,* 153 Iowa 234, 238.

They also cite upon this proposition: *Jones v. Nicholas,* 151 Iowa 362; *In re Podhajsky,* 137 Iowa 742; and *Lewis v. Curnutt,* 130 Iowa 423; holding, as they say, that there was a delivery, or complete gift and trust for the benefit of the claimant. This is what appellees claim in this case, and they rely upon these cases.

Appellant also cites: *Forney v. Remey,* 77 Iowa 549; *McCash v. Derby,* 158 Iowa 371.

And, as appellant says, these last named cases are based upon absolute conveyance of the fee, wherein the trustee is required to make conveyance or distribute to the beneficiary; that the conveyance in each case was absolute; that the trust was for the benefit of the grantor during his lifetime, and for the benefit of the designated beneficiary of the remainder, and the gift was of a present beneficial estate in the trust, though the enjoyment was postponed.

It is the contention of appellees that there was a present vesting of the title or estate in the heirs upon the execution of the trust deed.

As to the *Beedy* and *Prindle* cases, *supra,* cited by ap-

pellant, these are cases where it was claimed that there was a conflict between the premises and the *habendum* in the deed. In the *Beedy* case a deed of the husband, conveying property to the wife, reading: "Hereby sell and convey unto Lucy H. Beedy," and, "it is understood and agreed that the above conveyance is to be good and valid during the life of said Lucy H. Beedy, the grantee, but at her death the property, or the value thereof, to revert to the heirs of said L. H. and N. J. Beedy," is not void for repugnancy and conveys a life estate.

And in the *Prindle* case, where the granting clause made no mention of a charitable institution, but conveyed all property to the grantee and his heirs, a subsequent provision in the *habendum* clause for a remainder over to the institution was held to be invalid. In that case the deed was to Thieron W. Prindle, his heirs, etc., following which there was a provision limiting the estate granted, but there was no provision for or creating any trust therein.

In the deed involved in the instant case, there is no such conflict, being a full, complete and executed conveyance of the property from the grantor to the trustee, for the use and benefit of such persons as, at his death, should constitute his legal heirs then surviving, as provided by the laws of Iowa. The deed does not specifically name the heirs, and this could not be done for the reason that it was the intent and purpose of the maker that the beneficiaries should be such persons as at his death should be ascertained by the probate court to constitute his legal heirs. It is not so much a question as to how such heirs should procure the property from the trustee. The trustee has already parted with the property and turned it over to the administrators. If it had not done so, the law would afford a remedy as against the trustees to those legally entitled to the remainder. The important question is, rather, whether such trust deed is or is not revocable.

It is earnestly argued by appellant, and at considerable length, that the will executed by deceased shows that it was

the intention to reserve the right to revoke the trust convey-
ance. We have before referred to the *McCash*

1,4. DEEDS:
  extent of in-
  terest con-
  veyed : how
  determined :
  revocability :
  wills.

case. We think a material question under our
statute is, whether at the time of making the
trust deed there was any intent to reserve the
right to revoke it as shown by its terms. Sec.
2914 of the statute provides that every conveyance of real
estate passes all the interest of the grantor therein, unless a
contrary intent can be reasonably inferred from the terms
used. This section of the statute has frequently been con-
strued, and in *Edwards v. Sutherland,* 20 Iowa 502, the court
said that the statute means exactly what it says. See also
*Jones v. Des Moines,* 43 Iowa 209; *Butler v. Nelson,* 72 Iowa
732; *McDonald v. Bank,* 123 Iowa 413.

And in *Beedy v. Finney,* 118 Iowa 276, again construing
this statute, the court held that a deed is to be construed as
conveying all the interest of the grantor therein, unless a con-
trary intent can be reasonably inferred from the terms used,
and that the modern rule requires the construction of a deed
as a whole, and not in separate and distinct parts as was
formerly done.

The trouble with appellant's contention, it seems to us,
is that they overlook the fact that from the time of the execu-
tion and delivery of the trust deed to the time that the trustee
turned over and delivered the property to the administrators,
all the property, both real and personal, covered by the trust
deed, was vested in the trustee; and, as before shown, in one
part of their argument they concede this to be so. In other
parts of their argument they argue the case as though there
were no provision in the trust deed for the vesting of the title
to the property until after the death of the grantor. If the
trust deed had not provided for the vesting of the property
prior to the death of the grantor, and had simply provided
that the property should then go to his legal heirs according
to the laws of inheritance, a different proposition would be
presented.

In the instant case, the deed plainly provides that he conveys all his property, "save and except my personal apparel and household effects," in trust until such time following his death as an administrator or executor should be appointed. When this was done, the grantor provided that the property and title previously vested in the trustee should "vest in and become the absolute property of my legal heirs then surviving, as provided by the laws of inheritance of the State of Iowa." The trustee took the legal title to the property. It vested immediately on the execution and delivery of the instrument. Having once vested in the trustee, it remained there until after the death of the grantor; it was vested in the trustee when the decedent attempted to revoke the trust deed by a subsequent will, which would speak only from his death; being so vested, it was beyond the power of revocation by the grantor, by will or otherwise.

By the instrument, the legal title and possession of the property passed from the grantor to the trustee, to be held by it in trust during the remainder of the life of the grantor and until an administrator or executor of his estate should be appointed, when it might judicially ascertain who were his legal heirs, when the property covered by the trust deed was to be turned over to them, and his estate not covered by the trust deed administered according to the laws of the state. In the deed, the words "heirs, children and daughters," were used interchangeably, and we think the daughters had a valid, subsisting, beneficial interest in the property covered by the deed from the time of its execution. The deed was executed in triplicate. The daughters were charged with some responsibility in the execution of the trust, in that the books of account to be kept by the trustee were to be open to their inspection, and a vacancy occurring in the office of trustee should be filled by the grantor, together with the daughters. We think the grantor intended that his daughters should have his estate if they survived, or, in the event that one of them survived and the other did not, but left legal heirs, such heirs should

inherit the share of such daughter, and that the estate should go to such heirs as might be entitled thereto under the laws of inheritance of this state.

The deed provides that the trust period shall continue and exist during the life of the grantor and until an executor or administrator should be appointed and qualified. Appellant points to this provision to show that the grantor intended the instrument to be testamentary.

The conveyance covered the major portion, but not all of the property of the deceased. An administrator or executor was necessary for the property not covered by the trust deed. The deed did not cover his wearing apparel or household effects, which would include his clothing and, doubtless, jewelry, keepsakes and the like.

There are cases holding that an instrument may be partly a deed and partly testamentary in character. *Burlington University v. Barrett,* 22 Iowa 60, 70. *Tuttle v. Raish,* 116 Iowa 331, cited by appellant, is distinguishable from the instant case, in that, in that case there was no conveyance of the property either in trust or otherwise, nor was it executed with the formalities required for a will, and it was held that the instrument there under consideration was neither a will nor a deed.

In *Craven v. Winter,* 38 Iowa 471, it was said that if the instrument passes a present interest, although the right to its possession and enjoyment may not occur until some future time, it is a deed or contract; but if the instrument does not pass an interest or right until the death of the maker, it is a testamentary paper.

In *Wilson v. Carter,* 132 Iowa 442, it was held that whether the instrument passes a present or future interest is an important consideration in determining its character; that if it passes a present interest it should be considered a deed, while if it passes no present interest and is operative only at the death of the grantor, then it is testamentary in character and of no effect unless executed with the formalities of a will.

In *Saunders v. Saunders,* 115 Iowa 275, the instrument was in the form of a deed, and recited that the maker sold and conveyed certain land, subject to the occupancy and possession of the grantor during life, and recited that it was grantor's intention that the deed should be of no force until after the death of the grantor. It was held that it was the intention of the grantor to convey an interest *in praesenti,* and the instrument was valid as a deed, with the possession postponed until the grantor's death. In that case, referring to the case of *Leaver v. Gauss,* 62 Iowa 314, the court said that the appellant relied upon the *Leaver* case to support his contention, and that at first blush it might appear to do so. That in that case the instrument was a deed in form, but contained this language, "To commence after the death of both the said grantors," and, "It is hereby understood and agreed between the grantors and the grantees that the grantees shall have no interest in said premises as long as the grantors, or either of them, shall live." That the sentence last quoted was in effect a declaration that no estate was created, and the case was decided on that theory; that in the *Saunders* case there was no such declaration, and the intent was to be determined from the entire instrument.

*Taylor v. Taylor,* 118 Iowa 407, 413, is cited to show that no one can have heirs while living, which is, of course, technically true. In that case the court also said:

" 'A remainder is contingent when it is so limited as to take effect to a person not *in esse,* or not ascertained, or upon an event which may never happen, or may not happen until after the determination of the particular estate.' *Robinson v. Palmer,* 90 Me. 246 (38 Atl. Rep. 103). If the gift is immediate, though its enjoyment be postponed, it is vested; but if it is future, and is dependent on some dubious circumstance, through which it may be defeated, then it is contingent. Hence it has been said that the point which determines the vesting is not whether time is annexed to the gift, but whether it is

annexed to the substance of the gift as a condition precedent. *McClure's Appeal,* 72 Pa. 414. And in *Beaty's Adm'r. v. Montgomery's Ex'r.,* 21 N. J. Eq. 324, it was declared that whether a legacy is vested or contingent depends upon the event, and not on the time. If the event is uncertain, the legacy is contingent, though the time is fixed; and if certain, the legacy is vested, although the time is uncertain. The books are agreed that the law leans toward the vesting of remainders."

It was held that the words "or their heirs, as the law directs" meant such of decedent's children "as might be living at the time of the distribution and the heirs of such as might have predeceased."

In *Forney v. Remey,* 77 Iowa 549, there was a transfer of the property to the defendant, to be held in trust, as prescribed by the terms of the trust deed, and it was held that under the instrument the property passed to the defendant, who took it as trustee and held it subject to the terms of the trust; that the title passed to the defendant *in praesenti,* and did not wait until the death of the grantor; that the grantor lost ownership and control of the property by the execution of the trust deed, and by such instrument fixed the terms of the conveyance and its future disposition; that there was nothing in the conveyance, or in the facts connected with it, suggesting the idea of a future power of disposition retained by the grantor, and that the grantor could not revoke the grant nor in any way change its terms and conditions. Appellees contend that this case fully sustained their contention, and we think it does.

Of the cases relied upon by appellees, we have already referred to the *McCash* case, in which other cases are cited, some of which have been referred to in this opinion. The case of *Lewis v. Curnutt, supra,* is an interesting and instructive case, in which many of the contentions made by appellant in the instant case are decided adversely to appellant's con-

tentions.  In that case, the grantor executed a conveyance of real estate to a trustee, and at the same time, and as a part of the same transaction, made and delivered another written instrument, specifying the purposes for and the manner in which the trust was to be carried out and the property disposed of.  In the course of the opinion, the court said:

"It needs no argument to support the proposition that the owner of land may sever the fee into a life estate and a remainder, and that he may reserve the former to himself and sell or give the latter to whomsoever he will.  When he has done so, can it be said that the grantee of the remainder acquires no present interest in the land simply because he cannot come into possession and enjoyment of the property until after the grantor's death?  We think no lawyer will answer this inquiry in the affirmative.  .  .  .  Mrs. Crockett conveyed the property by an unconditional deed, and by an accompanying instrument provided that the trustee should not come into possession or control until after her death.  The legal effect of this was to create a life estate in her and a remainder in the trustee for the benefit of the *cestui que trust*. .  .  .  When a trust is executed by the delivery of a simple conveyance to the trustee, that act and instrument serve to pass an immediate present interest to the *cestui que trust*, no matter how far in the future the enjoyment of the benefit thus provided may be deferred.  .  .  .  It is next argued that a trust could not have been intended because the writings provide for the payment of the expenses and charges of settling of the grantor's estate, thus rendering possible the entire exhaustion of the property to the exclusion of the persons named as the beneficiaries.  It is sufficient to say of this point that it has no support in principle or authority.  It is competent for the trustor to convey his property to the trustee absolutely and without reservation or condition for the benefit of the objects of his bounty.  He is equally at liberty to make the gift subject to the payment of his debts, and in the latter

case the *cestuis que trustent* take the interest conveyed for their benefit *cum onere*. . . . But in this deed there is neither an express nor an implied power of revocation, and nothing that the grantor and trustee could thereafter do without the consent of the beneficiaries would affect the interest or right which had passed to the latter by virtue of the original grant.

. . . The argument that, even if a present interest or title did pass to the trustee, it was in trust for the grantor alone, or a mere power or agency which necessarily ceased with her death, cannot be upheld. . . . Though dead when her benefaction is consummated, she speaks and acts through her trustee, as she would speak and act through her executor, had she chosen to make similar distribution of her property by will. . . . It is true, however, that Curnutt was a trustee for Mrs. Crockett, as well as for the other parties named in the trust instrument. He held the property in trust for her for life, and by the same authority held the remainder in trust for those whom she had designated to receive it.''

In the *Podhajsky* case, *supra,* the deceased executed a deed of conveyance to his wife, and at the same time, an instrument in writing by which he created a trust in another, as trustee, for the use and benefit of certain persons therein named. The court held that the two instruments should be construed together and that they created a trust, and such trust was enforced by the court. In the opinion, the court said:

''It will not be disputed that it is entirely competent for a person, either by a duly acknowledged written instrument, or even by parol, to turn over personal property, moneys, securities or choses in action into the hands of another, to be held and used for the benefit of some designated beneficiary, and that, when this is done, such beneficiary obtains an immediate and vested interest in the subject of the trust, which the trustor cannot revoke or disaffirm unless such power of revocation has been reserved in express terms at the time the

trust was created. . . . And this is none the less true where the trust is entirely voluntary and without any valuable consideration passing from the beneficiary to the trustee. . . . Neither will the fact that the trust cannot be administered and settled until after the death of the trustor afford any reason for invalidating the trust.''

In the instant case, the personal property referred to in the deed of trust was turned over to the trustee.

Other questions are argued, but the opinion is already too long, and we shall not take further time or space to consider them.. The points referred to are controlling. It is our conclusion that the grantor in the deed of trust had no power to revoke, and that the trustee took the title to the property for the benefit of the daughters of deceased, who are now entitled to the same. Such was the conclusion of the district court, and its order is—*Affirmed.*

DEEMER, C. J., EVANS and LADD, JJ., concur.