Elwin Donald BRENNEMAN, Margaret Zoe Hemmingson and Barbara Esterbrook, Appellees,

v.

Nancy Ruth Hockett BENNETT and Elizabeth Anne Hockett Mayer, Appellants.

No. 19625.

United States Court of Appeals Eighth Circuit.

Jan. 6, 1970.

Robert G. Riley, of Duncan, Jones, Riley & Davis, Des Moines, Iowa, for appellants, Jerry P. Alt, Des Moines, Iowa, on the brief.

Jeffrey E. Lamson, of Herrick, Langdon, Belin & Harris, Des Moines, Iowa, for appellees, David W. Belin, Des Moines, Iowa, on the brief.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

This case presents the troublesome problem of construing an instrument executed in 1918 [1] by Christian and Sarah

I. Pertinent portions of the "trust deed" are:

■ KNOW ALL MEN BY THESE PRESENTS: That SARAH A. NYSEWANDER and C. NYSEWANDER, her husband, of the County of Polk, and State of Iowa, in consideration of love and affection, do hereby grant, bargain, sell and convey unto the said Sarah A. Nysewander and C. Nysewander, as Trustees, and to the survivor thereof as sole trustee, and to their successors in trust, hereinafter named, the following described real estate, situate in the County of Polk, State of Iowa, to-wit:

Lot Five (5) in Block "E" of Grimmel's Addition to Fort Des Moines, Iowa, except Twelve (12) feet in width off the East side of said lot, being now designated as Lot Two (2) of the Official Plat of Lots Four (4) and Five (5) in Block "E" of Grimmel's Addition to Fort Des Moines, now included in and forming a part of the City of Des Moines, Iowa, *IN TRUST* nevertheless

for the following uses and purposes:

■ 1. To look after, preserve, protect and manage said premises; and to collect and receive all rent, income and profits therefrom during the life of this trust.

\* \* \* \* \*

■ The Iowa Improvement Company now holds a ninety-nine (99) year lease of said premises, partly run, and should said lease become forfeited or terminate before the end of the term thereof; and should the net income or profits from said premises under said lease, or any other lease, thereon be insufficient comfortably to support said Sarah A. Nysewander or C. Nysewander, or the Survivor thereof, then they, without leave of Court, may, and the survivor by leave of Court, may, incumber said premises in an amount necessary to maintain them or the survivor in comfort according to their usual station in life; and also on the death of one of said grantors should three-fifths of said income be insufficient comfortably to support the survivor according to his or her station in life, then all of said income from said

premises, or so much as may be needed, may be used for that purpose, and in such contingency said provision on page one hereof giving said two daughters two-fifths of said income after the death of one of said grantors is correspondingly modified and changed.

■ After the death of both grantors herein, each of said daughters, Bertha Elizabeth Hockett and Nancy Ethel Nysewander may make a will bequeathing and devising a one-half interest in said premises, and in said rentals therefrom during this trust and thereafter, to whom and in such manner as each may see fit, subject however to said Trust, which trust shall expire on the death of all of said four beneficiaries, and when Elizabeth Anne Hockett attains the age of thirty-five years, and thereupon said premises and lease shall, subject to said Trust, belong absolutely and in fee to the heirs of each, one-half to the heirs of one and the other one-half to the heirs of the other said daughter, or to whomsoever each said daughter may give her said one-half share by will. But neither of said daughters, or other beneficiaries may anticipate her or their share or interest in said Trust Estate, or transfer or incumber the same, or may the same be garnished or attached by any court process or procedure whatsoever during the life of this trust.

■ Upon the death of both said grantors, said Bertha Elizabeth Hockett and Nancy Ethel Nysewander or the survivor thereof, shall succeed them as Trustees, or Trustee, of this Trust. No bond shall be required of any of said four trustees by any Court or Judge.

\* \* \* \* \*

■ Should either said Bertha Elizabeth Hockett or Nancy Ethel Nysewander not make provision by will for the payment of her share of the income of said premises after death, then the net income from said premises not so provided for by will shall during the life of the Trust be paid to their legal heirs, one-half to the heirs of each, or one-half of said income to the heirs of which-

Nysewander, husband and wife (hereinafter Christian and Sarah). The controversy is between the natural children (appellants) of Bertha Elizabeth, one of the daughters of Christian and Sarah, and the adopted children (appellees) of Nancy Ethel, the other daughter of the Nysewanders. The specific question in issue is whether the 1918 instrument created an irrevocable trust entitling the appellees to an interest in the trust res. The district court held that such was the legal effect of the instrument. Brenneman v. Bennett, 294 F.Supp. 1126 (S.D. Iowa 1968). From the judgment granting appellees, inter alia, an undivided one half interest in the property, appellants have perfected this appeal.

Jurisdiction based on diversity of citizenship and the requisite amount in controversy has been established.

The facts are undisputed. Bertha Elizabeth Nysewander was married in 1911 to Stephen D. Hockett. Of this marriage two children were born, appellants herein. Nancy Ethel Nysewander was married in 1923 to Jesse Brenneman. The Brennemans adopted three children, appellees herein. Elwin Donald Brenneman and Margaret Zoe

Brenneman were adopted in 1931. Barbara Brenneman was adopted in 1939.

Christian and Sarah died in 1949 and 1934, respectively. Their older daughter, Bertha Elizabeth, preceded them in death on May 5, 1925. The death of their younger daughter, Nancy Ethel on November 10, 1966, served as the impetus for this litigation.

In 1918 the Nysewanders executed the previously mentioned "trust deed" conveying certain commercial property in Des Moines, Iowa, to themselves as trustees. Their daughters were to serve as successor trustees upon Christian and Sarah's deaths. Provision was made for management of the property, for distribution of the income generated to the settlors and their daughters as beneficiaries, and for termination of the trust on the deaths of the Nysewanders and their daughters and when Elizabeth Anne Hockett, daughter of Bertha, reached the age of thirty-five. Upon termination of the trust the heirs of the daughters, subject to the latters' power of disposal by will, were to become the owners of the trust property.

On July 31, 1923, Christian and Sarah sought to revoke the 1918 trust by conveying the property to their daughter Nancy for a nominal consideration.[2]

---

ever of said daughters may not make such provision in her will.

While both said grantors live they do hereby expressly reserve the right and privilege to sell, transfer, exchange, incumber or dispose of said premises or said lease thereon as they may see fit without any obligation on the part of the purchaser to see to the application of the purchase money, but such right shall cease on the death of either of said grantors; and in case said lease now on said premises should be forfeited, or cease and determine during the life of this Trust, the Trustees or Trustee then in office are hereby given authority without leave of Court to make a new lease of said premises extending for a term of not over ninety-nine years, and said grantors only may, if they see fit, arrange with the holders of said lease now on said premises to cancel, change, or terminate said lease while both said grantors are alive.

* * * * *

ACCEPTANCE OF TRUST

We, the above named grantors, and each of us do hereby accept the within and foregoing trust and agree to keep and perform its terms and conditions.

Dated at Des Moines, Iowa, this 13th day of May, 1918.

/s/ Sarah A. Nysewander
/s/ C. Nysewander

2. Warranty Deed.

*KNOW ALL MEN BY THESE PRESENTS: That* Sarah A. Nysewander and C. Nysewander, her husband pursuant to authority reserved in a certain trust deed executed by them May 13, 1918 *of* Polk *County, and State of* Iowa *in consideration of the sum of* One Dollar and other consideration *DOLLARS, in hand paid by* Nancy E. Nysewander of Polk *County, and State of* Iowa *do hereby SELL AND CONVEY unto the said* Nancy E. Nysewander *the following described premises,*

She immediately reconveyed the property to her parents, who then executed another trust deed again conveying the property to themselves as trustees. This deed expressly reserved to the settlors the power to amend the trust. On May 22, 1925, Sarah and Christian, pursuant to the authority reserved in the 1923 trust, terminated same and executed a new trust. The only terms of the 1925 trust material to this litigation limited the right of succession to the trust property to the "heirs of the body" of Bertha and Elizabeth, respectively. This trust, if effective, would preclude appellees from sharing the trust proceeds.

The case revolves in large measure around one paragraph, appearing as number ten in footnote 1 supra, which reads as follows:

"While both said grantors live, they do hereby expressly reserve the right and privilege to sell, transfer, exchange, incumber or dispose of said premises or said lease thereon as they may see fit without any obligation on the part of the purchaser to see to the application of the purchase money, but such right shall cease on the death of either of said grantors; and in case said lease now on said premises should be forfeited or cease and determine during the life of this trust, the Trustees or Trustee then in office are hereby given authority without leave of Court to make a new lease of said premises extending for a term of not over ninety-nine years, and said grantors only may, if they see fit, arrange with the holders of said premises to cancel, change, or terminate said lease while both grantors are alive."

Appellants contend that this clause reserved to Sarah and Christian *as grantors* the right to sell or otherwise dispose of the trust property free and clear of their obligations as trustees to the beneficiaries. According to appellants this reserved power was tantamount to an express power of revocation, and when exercised in 1923, effectively revoked and terminated the 1918 trust. However, the trial court found that the powers reserved in this clause were reserved to Sarah and Christian as *trustees* and necessarily had to be exercised in that capacity. 294 F.Supp. at 1131. Accordingly, the district court held that the 1918 trust was irrevocable; that the attempt to revoke it was without effect; that the 1925 trust, by which appellees are excluded from sharing the trust proceeds, had no effect on the property in dispute; and that the 1918 trust remained as the dispositive instrument.

We agree with the district court's holding that the 1918 trust was irrevocable and affirm.

■ In construing this trust for the purpose of determining the rights created we are bound to follow the law of Iowa, the state in which the settlors resided and in which the trust property is located. United States v. Pierce, 137 F. 2d 428 (8th Cir.1943); Bingen et ux. v. First Trust Co., 103 F.2d 260 (8th Cir. 1939); Harrison v. City National Bank, 210 F.Supp. 362 (S.D. Iowa 1962); United Building & Loan Association v. Garrett, 64 F.Supp. 460 (W.D.Ark. 1946).

■ Iowa recognizes the right of a trust settlor to retain the power to revoke by so providing in the instrument. E.g., Anderson v. Telsrow, 237 Iowa

*State of* Iowa, *to-wit:* Lot Five (5) in Block "E" of Grimmel's Addition to Fort Des Moines, Iowa, except Twelve (12) feet in width off the East side of said lot, being now designated as Lot Two (2) of the Official Plat of Lots Four (4) and Five (5) in Block "E" of Grimmel's Addition to Fort Des Moines, now included in and forming

*situated in the County of* Polk *and* a part of the City of Des Moines, Iowa.
*And the said* Sarah A. Nysewander and C. Nysewander *hereby relinquishes* their *right of dower in and to the above described premises.*
*Signed the* 31st *day of* July *A. D.* 1923.
/s/ Sarah A. Nysewander
/s/ C. Nysewander

568, 21 N.W.2d 781 (1946); Dunn v. Dunn, 219 Iowa 349, 258 N.W. 695 (1935); In re Podhajsky's Estate, 137 Iowa 742, 115 N.W. 590 (1908). While it is fundamental that the power to revoke does not exist by implication, such power is reserved if it plainly appears from the terms of the trust instrument that the settlor so intended. To illustrate, in In re Tolerton's Estate, 168 Iowa 677, 150 N.W. 1051 (1915), the Iowa court stated that:

> "it must appear from the instrument that there was an *intention* upon the part of the grantor to reserve the right of revocation; otherwise no such right remained in the grantor." 168 Iowa at 689, 150 N.W. at 1054. (emphasis supplied).

See also Anderson v. Telsrow, supra; Dunn v. Dunn, supra. Accord, G. Bogert, Trusts and Trustees § 1000 (2d ed. 1965); A. Scott, Trusts § 330.1 (3d ed. 1967).

We note parenthetically that several jurisdictions have found that where the settlor does reserve the power to sell or otherwise dispose of the trust res and retain the proceeds he has effectively retained the power of revocation. United Building & Loan Association v. Garrett, supra; Sims v. Brown, 252 Mo. 58, 158 S.W. 624 (1913); Trenton Banking Co. v. Howard, 187 A. 569 (Ct. of Chancery N.J.1936); Damiani v. Lobasco, 367 Pa. 1, 79 A.2d 268 (1951). See also A. Scott, Trusts § 330.1 (3d ed.1967); G. Bogert, Trusts and Trustees § 1000 (2d ed.1965).

█ In view of the above authorities, we are persuaded, notwithstanding appellees' contention to the contrary, that retention by the settlor of a power to sell or otherwise dispose of the trust res without regard to the rights of the beneficiaries would constitute a reserved power of revocation under Iowa law. Proceeding on this premise the crucial question for decision is whether the Nysewanders reserved the power to sell or otherwise dispose as *grantors or settlors* as urged by appellants, or as *trustees* as contended by appellees and found by the trial court.

█ On first blush it would appear that the power is reserved to Christian and Sarah as settlors or grantors. The term "grantors" is used as is the term "reserved" in defining the power in question. Appellants seize upon these terms and urge that the power to sell or dispose was *retained* in the *grantors* and not *conveyed* to the *trustees*. The argument is not without merit. However, trust provisions are not to be construed in the abstract, but rather must be viewed against the background of the entire instrument. As the Iowa court observed in Dunn v. Dunn, supra, "In construing this particular paragraph, it must be done in light of the evident meaning and intent of the whole trust instrument; * * *." 219 Iowa at 356, 258 N.W. at 699. See also, In re Work Family Trust, 260 Iowa 898, 151 N.W.2d 490 (1967).

We are here considering an instrument where the principals, Christian and Sarah, were cast in three roles—the settlors, the initial trustees, and the initial beneficiaries. Examination of the "trust deed" in its entirety shows that the Nysewanders used the words "grantors" and "trustees" interchangeably, rather loosely, and at times not in harmony with the power reserved or the right created. For example, in the fifth paragraph, which concerns the support of the Nysewanders as beneficiaries of the trust, they are referred to by name and are authorized to incumber the premises in order to adequately support themselves. It seems clear that the power to incumber the property was to reside in the Nysewanders as "trustees," despite the fact that they were not so denominated. In the seventh paragraph, providing for successor trustees, the Nysewanders are designated "grantors" when manifestly they are being referred to as first trustees. In the tenth paragraph, in dealing with the authority to make a new lease, a limited power is first delegated to the "Trustees" or "Trustee," following which the "grant-

ors" are granted a broader authority to make a new lease. In this instance it again seems that the term "first trustees" should have been used instead of the term "grantors." Finally in the "Acceptance of Trust," the " 'grantors' * * * hereby accept the within and foregoing trust and agree to keep and perform its terms and conditions." (emphasis supplied). Certainly by any standard, the settlors of a trust, the parties who are conveying the property in trust, would not accept the property and agree to discharge all obligations imposed by the terms and provisions of the trust instrument. If the trust is to have any meaning or force, the trustees and only the trustees would be the acceptors.

From the foregoing it is clear that neither the term "grantors" nor the term "trustees" was invariably used to designate the Nysewanders in their respective capacities as settlors or first trustees. Indeed the term "grantors" was frequently used to designate the Nysewanders as the first trustees of the trust. We believe that the trial court correctly held that, as used in the first clause of the tenth paragraph, the term "grantors" referred to the Nysewanders as the initial trustees and not as the settlors. Several considerations compel this conclusion.

█ It is a general rule of construction of written instruments, including trusts, that an ambiguous instrument will be construed against the maker. As applied to trusts the rule requires a construction in favor of the beneficiary and against the settlor. E. g., Funsten v. Commissioner of Internal Revenue, 148 F.2d 805 (8th Cir.1945). See also 90 C.

J.S. Trusts § 161(e). We are unaware of any Iowa case applying this principle to a trust. However, Iowa does apply the general rules of construction of written instruments to trusts. In re Work Family Trust, supra. We note that in so ruling the Iowa court cited with approval 90 C.J.S. Trusts § 161. We also note that Iowa has long recognized that contracts are to be construed most strongly against the party drawing them. E. g., T. M. Sinclair & Co. v. National Surety Co., 132 Iowa 549, 107 N. W. 184 (1906); Vorthmann v. Great Lakes Pipe Line Co., 228 Iowa 53, 289 N.W. 746 (1940); Pazawich v. Johnson, 241 Iowa 10, 39 N.W.2d 590 (1949). Thus, we are persuaded to believe that the Iowa court would adhere to the same rule in construing an ambiguous trust.

As previously demonstrated, the clause in question is ambiguous when viewed in the framework of the whole trust. To construe it as appellants urge would substantially detract from the rights of the beneficiaries under the 1918 instrument, since their interest in the trust would be subject to a power of revocation. Christian and Sarah had it within their power to clearly reserve to themselves as settlors the power to revoke the trust. Study of both the 1923 trust and the 1925 trust reveals that the Nysewanders well knew the means by which a revocable trust could be created.[3]

Cases involving construction of trusts necessarily turn on their own peculiar facts thereby diminishing the precedential value of previous case law. However, there are decisions holding that broad powers of sale or other disposition which were included in a trust resided

---

3. For example, the 1923 trust contained a clause identical to the one which appellants now contend granted the Nysewanders the power to revoke the trust. However, immediately after that clause, and in the same paragraph, the settlors explicitly provided:

"[a]nd said grantors during the lifetime of both hereby further reserve the right and privilege to change, modify, or amend any and all provisions hereof as they may see fit."

The 1925 trust contained the following proviso:

"PROVIDED, ALWAYS, that this trust conveyance and agreement may, during the lifetime of said Sarah A. Nysewander and C. Nysewander, by their joint action, be altered, modified, changed, or abrogated, but not otherwise. * * *"

in the trustee and did not render the trust revocable. Estate of Willard v. King, 37 T.C. 973 (1962); Emma B. Maloy, 45 B.T.A. 1104 (1941); Frederick Ayer, 45 B.T.A. 146 (1941); Christopher L. Ward, 40 B.T.A. 225 (1939); St. Louis Union Trust Co. v. Dudley, 162 S.W.2d 290 (Mo.App.1942); City of Washington v. Ellsworth, 253 N.C. 25, 116 S.E.2d 167 (1960); Osborn v. Bankers Trust Co., 168 Misc. 392, 5 N.Y.S.2d 211 (1938). Two of these cases are particularly supportive of both our conclusion and analysis. In the *Osborn* case the court examined the instrument and found that the reservation of power was ambiguous. Because of this ambiguity the court chose to construe the trust in favor of the beneficiaries thereby holding the trust to be irrevocable. And in the *Maloy* case the court responded to the contention that a broad reserved power rendered the trust revocable by stating:

> "If such power (the power to revoke) had been retained, it would have been of great importance. Its exercise could have nullified the trusts. No such power is expressly reserved, although had that intent existed it would have been a simple matter to retain it in definite and unmistakable language. We think no construction of this provision as including such right, when it was not explicitly reserved, could have been made without a disregard of the cardinal duty of the trustee to safeguard and conserve the corpora of these trusts in the interest of both the life tenant and the remaindermen." Id. at 1108.

Furthermore, construction of the disputed clause so as to reserve the power of sale or other disposal to the trustees for the benefit of the beneficiaries is consistent with other provisions of the trust and other manifestations of the settlors' intent. It merely broadens the powers of the initial trustees granting them the authority to sell or dispose of the property in order to best serve the purposes of the trust. That the Nysewanders should reserve this broad mana-gerial power only to themselves as trustees is not unusual. Because of their familiarity with the trust property, presumably they believed themselves more competent than subsequent trustees to exercise the power of disposal. See generally A. Scott, Trusts § 196 (3d ed. 1967). Additionally, it will be recalled that in paragraph ten of the trust, immediately after the disputed clause, the potential purchaser of the trust property is relieved of any obligation in regard to the application of the proceeds. Were appellants' construction of the disputed language adopted, it would have been unnecessary to relieve the potential purchaser of the duty to "see to the application of the proceeds," as the purchaser would then have no such duty. Thus, taking appellants' construction of the trust would render that "proceeds" clause meaningless. We also take cognizance of the absence of any provision permitting the person exercising the power of sale to retain the proceeds for his own benefit. This would seem to constitute further evidence that the "grantors" denominated in the disputed clause were to act as trustees not grantors, and that such proceeds were to be impressed with the general obligations of the trust.

Accordingly, we affirm the district court's holding that the 1918 trust was irrevocable; that the transactions of July 31, 1923 were invalid attempts to revoke that trust and therefore void and without legal effect; that neither the 1923 trust nor the 1925 trust has any legal effect; and that the 1918 trust remains the dispositive instrument over the disputed property.

BLACKMUN, Circuit Judge (separately concurring).

I concur in Judge Matthes' carefully prepared opinion but, fussily, wish to add a comment or two.

This case presents the situation, by no means unusual in trust law, where the trust instrument is drawn and executed and the trust is activated and then, a short while later, the trustor feels it necessary or advisable to make changes

in the governing provisions. This may be due to oversight or to further contemplation of the hazards of life or to newly developing family concerns. But, whatever the cause, the barrier of irrevocability may present itself and, when it does, the trustor and his scrivener have the sizable task of undoing and beginning again.

This happened for the Nysewanders, as it has for many others. However, irrevocability of a particular trust is not a trap of the kind which has developed through rigid legal concepts spun in many areas of the law. There is usually a purpose behind irrevocability. It may be a desire for an assured and fixed family plan, or a wish permanently to be rid of property with its attendant burdens, or a desire to achieve certain tax consequences, and the like.

The issue in this case is simple and precise: Does the power of sale and disposal reserved by the senior Nysewanders in the eighth unnumbered (designated [10] in footnote 1) paragraph of their 1918 Trust Deed constitute a power to revoke the trust? It seems clear to me, both from a reading of the entire instrument and of that particular paragraph, that it does not. The power is no more than the routine, common power of sale (although limited here as to duration) customarily present in a trust instrument and the presence of which is desirable and, indeed, almost imperative for facile and smooth trust administration.

This being so, the well-known rules (a) that a trust is irrevocable unless revocability is expressly reserved, Dunn v. Dunn, 219 Iowa 349, 354, 258 N.W. 695, 697–698 (1935); Young v. Young-Wishard, 227 Iowa 431, 288 N.W. 420, 426 (1939), or is clearly apparent, see In re Tolerton's Estate, 168 Iowa 677, 150 N.W. 1051, 1054 (1915); In re Work Family Trust, 260 Iowa 898, 151 N.W.2d 490, 495 (1967), and (b) that, if there is ambiguity, the conclusion which favors the beneficiary, as against the settlor, is to be drawn, see Funsten v. Commissioner of Internal Revenue, 148 F.2d 805,

808 (8 Cir.1945); St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W.2d 359, 365 (1944); 90 C.J.S. Trusts § 161(e) (1955), demand an affirmance of the result reached by Judge Stephenson.

One must recognize, of course, that when this trust was drawn and executed in 1918, now a half century ago, the niceties of trust language were not so urgent or so well developed as in this day when serious income and death tax consequences may attend any deviation on the part of the scrivener from meticulously selected words. Yet even a 50-year-old instrument must be construed when it is in litigation. For me, the Iowa decisions in *Dunn*, *Young*, and *Work*, supra, and the implications of those holdings, are then persuasive and compelling.