IN RE TERMINATION of WORK FAMILY TRUST.

JORDON M. WORK, appellant, v. CENTRAL NATIONAL BANK & TRUST COMPANY of Des Moines et al., appellees.

No. 52555.

(Reported in 151 N.W.2d 490)

June 6, 1967.

Jordon M. Work, of Ottumwa, and Anthony M. Critelli, of Des Moines, for appellant.

William R. Ruther, of Burlington, for appellees Robert J. Work and Marianne Newcomb.

Gibson, Stewart & Garrett, of Des Moines, for appellee Central National Bank & Trust Company.

BECKER, J.—Action to terminate trust and direct distribution of assets. Plaintiff Jordon M. Work, one of the trustees and a beneficiary, now contends that he is the only beneficiary entitled to receive the corpus of the trust. After trial the district

court held that all six beneficiaries named in the trust instrument were entitled to share in the corpus, pro rata. We agree.

In 1955 Eva J. Work, plaintiff's mother, executed a trust agreement naming her son, Jordon M. Work, and Central National Bank & Trust Company of Des-Moines cotrustees of assets expected to be received from her husband's estate. This instrument provided in relevant paragraphs that the beneficiaries of the trust were Jordon M. Work, her son, and Mr. Work's five children, naming them specifically (and any child of Jordon M. Work born hereafter or child of a deceased beneficiary named herein) ; the net income was to be applied by the *corporate trustee* in its uncontrolled discretion to the benefit of any one or more of the named beneficiaries with power to expend the capital in the corporate trustee's discretion; a spendthrift trust clause was provided.

Paragraph VI states as follows: "Since it is the primary purpose, in establishing this trust, that the Trustees shall have available funds with which to acquire stock of the Farmers & Merchants Savings Bank, of Ottumwa, Iowa, Trustees may at their discretion purchase stock in said bank, and mortgage or sell property to pay for same."

Paragraph VIII provides: "Duration and Termination. This trust is irrevocable during the lifetime of Settlor. The duration of this trust shall be for a period of ten years certain from date hereof. It may be extended from time to time at the will of the majority of living beneficiaries then of legal age."

Other provisions material to this action will be noted as necessary. No specific provision is provided relating to distribution of capital or accumulated income at termination of the trust.

█ █ I. General rules of construction apply to the construction of trusts, whether they are contracts, deeds or wills. 54 Am. Jur., Trusts, section 17, page 34; 90 C. J. S., Trusts, section 161, page 19. Courts seek the intention of the settlor. In so doing they construe the language of the trust instrument as a whole. In re Estate of McCulloch, 243 Iowa 449, 52 N.W.2d 67.

Here the intent to create an irrevocable trust to exist for the lifetime of the settlor is plainly stated. The beneficiaries of

902

the trust are specifically enumerated. The duties of the trustees are spelled out in detail.

Plaintiff contends that construing the instrument as a whole it cannot be concluded that the testator intended to direct the disposition of the corpus equally to the six named beneficiaries and that the purpose of the trust failed, thus creating a resulting trust in favor of settlor's estate of which he is the sole beneficiary. We cannot agree.

In addition to expression of irrevocability during the lifetime of the settlor, the trust further provides that it may be extended from time to time at the will of the majority of living beneficiaries of legal age. This clearly negatives any intent that the corpus would ever return to the trustor's estate after death. This election could be made only after 10 years had elapsed *and* trustor had died. It was beyond the power of trustor's estate fiduciary to reach these assets in opposition to the will of a majority of adult beneficiaries. Further, as plaintiff himself acknowledges in his pro se brief, this feature of the trust was designed to prevent testator's estate "from being charged with the value of the (trust) assets." Mr. Work argues that this was merely an incidental feature, not a purpose, of the trust. We deem it a valid and important purpose which must affect our construction. The intent *not* to have the funds return to the settlor's estate appears to be clear.

II. Plaintiff contends that it was never intended that the assets were to be distributed equally and refers to Paragraph II of the trust instrument:

"II. The net income may be paid to or applied for the benefit of any one or more of this group in such amount, or amounts, as the Corporate Trustee in its uncontrolled discretion may determine; the principal shall be expendable for any one of the group as the Corporate Trustee may determine."

This paragraph creates a discretionary trust (sometimes called a trust to apply). Gunn v. Wagner, 242 Iowa 1001, 1009, 48 N.W.2d 292, and cases there cited. In Ponzelino v. Ponzelino, 238 Iowa 201, 206, 26 N.W.2d 330, 333, we said: "Also there can be a trust of which the beneficiaries are members of a definite class among whom the trustee is authorized to select who

shall take and in what proportions. Restatement of the Law, Trusts, sections 120, 121, 127, comment e; * * * [other citations]."

In 89 C. J. S., Trusts, section 45, page 791, states: "Respective interests need not be designated where there are several beneficiaries, as it is presumed they take equal interest, so that the trust is not uncertain. It is not essential that a beneficiary should have the entire beneficial interest or that the extent of the interest of the beneficiary be definite or definitely ascertainable at the time of the creation of the trust."

It is presumed that the trustees will treat each of the beneficiaries fairly. Despite the broad discretion lodged in corporate trustee any arbitrary action could be challenged in a court of equity. Keating v. Keating, 182 Iowa 1056, 165 N.W. 74; In re Estate of Tone, 240 Iowa 1315, 1321, 39 N.W.2d 401, and Iowa Code, 1966, section 633.10(4).

Here of course the corporate trustee's actions have been shown to be impartial at all times. No complaint is made as to its distribution of assets. Indeed, none is shown to have been distributed. The trustee bank simply desires to distribute the funds of this trust to the person or persons entitled thereto.

The contra argument is that since no provision is clearly made as to the disposition of trust property at termination of the trust the trustee now holds for the benefit of the settlor's estate and as sole beneficiary of that estate he takes all of the assets.

In Scott on Trusts, Second Ed., section 128.2, page 932, it is said:

"Where the income is to be paid to a beneficiary and there is no provision with respect to the principal, it depends upon the interpretation of the trust instrument whether the beneficiary's interest is limited to a right to receive the income for life or whether he has the entire equitable interest in the trust property. * * *

"In determining the extent of the interest given to the beneficiary, it is necessary to consider the language used in the trust instrument as interpreted in the light of all the circumstances."

While no Iowa cases are cited which sustain the proposition that a gift of income may be held under proper circumstances to include a gift of corpus there are several cases in other jurisdictions reaching such results where, under all of the facts and circumstances, the court found such to be the intent of the settlor. Gourley v. Greene, 102 N. H. 501, 503, 161 A.2d 172, 174 states:

"The failure to devise a gift over of any remainder, while not conclusive evidence, may, in light of all the surrounding circumstances, indicate an intention on the part of the testatrix to devise the entire interest in property. Ruel v. Hardy, 90 N. H. 240 [6 A.2d 753].

"Other eminent authorities reach this conclusion. 'In determining the extent of the interest given to the beneficiary, it is necessary to consider the language used in the trust instrument as interpreted in the light of all the circumstances. In many cases it has been held that the beneficiary is entitled to the entire beneficial interest even though the trust instrument speaks only of the payment of income to him. Where there is a gift of income without limitation of time, express or implied, there is a gift of the entire beneficial interest.' II Scott on Trusts, sec. 128.2. To the same effect see Wilkins v. Miltimore, 95 N. H. 17 [56 A.2d 535]; Boulton v. Clough, 96 N. H. 404 [77 A.2d 853]."

In Fidelity Union Trust Co. v. Robert, 67 N. J. Super. 564, 578, 171 A.2d 348, 356, it is said: " '* * * The rule applicable is that where there is a bequest of income from real or personal estate, or from both, without limit of time, or gift over which can operate, it is a bequest of principal, if there be no expression in the will of a contrary intent. The rule applies whether the gift of income be direct or through the intervention of a trustee, and is not to be defeated because some duty in realizing assets and securing and paying the income is cast upon the trustees. * * *' "

■ Here the power was to distribute both income and corpus. That power was never used. The beneficiaries at their election could continue the trust indefinitely. Under the facts and circumstances heretofore recited we hold that Mrs. Work intended that the entire beneficial interests of the assets were

to be held for the benefit of the named beneficiaries who must now share equally.

III. Plaintiff further argues: "This feature [power to pay disproportionate share] is desirable because it allows the Corporate Trustee to distribute all the money to the beneficiary needing it most at that time. The practice was to give most of the money to the beneficiaries while they were attending college. It is now grossly out of proportion for Marianne and Robert to claim their full share of the corpus while Jim and John will have to stand their chances of obtaining an education without the protection this fund provided the older grandchildren." The short answer to this argument is that the record does not show how the income was distributed (if any income was in fact distributed). We cannot conclude under this record that any inequity will result from the trial court's solution to this problem.

If the settlor had intended that the trust remain intact until the youngest beneficiary had been educated she could have said so. Contrariwise, she provided that after her death (if 10 years had elapsed) the majority of the adult beneficiaries would decide as to continuation (or termination) of the trust. There is no showing that a majority of adult beneficiaries so voted.

It should also be kept in mind that the education of these children was not the basic responsibility of this grandmother. The responsibility for the education of the two remaining minor children lies with plaintiff, their father. The record does not reveal that he is either unwilling or unable to meet that responsibility. The word education is nowhere mentioned in the trust document and there is nothing in the instrument to indicate that education of the children was considered at the time of its execution.

IV. One of plaintiff's main arguments is predicated on the assertion that the purpose of the trust was to acquire control of the Farmers and Merchants Savings Bank of Ottumwa. That bank ceased operation in 1955. Therefore the purpose of the trust is said to have failed and a resulting trust ensued to the benefit of settlor's estate, citing In re Estate of Barnes, 256 Iowa 1043, 128 N.W.2d 188 and 130 N.W.2d 227, and several other Iowa cases. None of these cases are factually in point. The

906

principal reason for such conclusion is that here only one of the purposes of the trust failed. A second and very valid purpose, i.e., to divest settlor's estate of the assets put in trust, was and is still very much alive. Such purpose requires distribution to the beneficiaries to effectuate that purpose.

V. Plaintiff also relies on the proposition that Exhibit T-2 called Clarification of Intent, signed by the settlor in 1960, some five years after the trust was created and operating, should have been considered by the trial court. Although the elapsed time between execution of the trust and the clarification of intent, and the circumstances under which executed, severely damage the exhibit's probative value, we consider the proposition.

The exhibit was objected to as incompetent, irrelevant, immaterial and hearsay. The objection was sustained on the latter ground. We agree that the exhibit is within the exceptions to the hearsay rule. In Butler v. Butler, 253 Iowa 1084, 1118, 114 N.W.2d 595, this court said: "There is a well established exception to the hearsay rule, where statements are made as to design or plan." The exception is discussed therein at length and will not be repeated here.

In Dunn v. Dunn Trust, 219 Iowa 349, 357, 258 N.W. 695, we said: "We have held that it is always competent in construing or interpreting a contract containing inconsistent and ambiguous language to show the situation of the parties, the subject-matter, and the acts of the parties thereunder, and that such showing by parol is no infringement of the rule that contracts cannot be changed or varied by parol evidence. Thompson v. Locke, 65 Iowa 429, 21 N.W. 762; Shuler v. Dutton, 75 Iowa 155, 39 N.W. 239, 240; Collins v. Phillips, 91 Iowa 210, 59 N.W. 40; Wallace v. Ryan, 93 Iowa 115, 61 N.W. 395."

Here it is at least arguable that the silence re distribution of the corpus created an ambiguity. But the bulk of Exhibit T-2 was incompetent because it is more than a statement of intent. It is a clear attempt to modify an irrevocable trust. "If the settlor does not by the terms of the trust reserve a power to modify the trust, he cannot modify it after its creation either by cutting down or taking away the interest of any beneficiary

without the consent of the beneficiary, or by changing the duties or powers of the trustee, or otherwise." II Restatement, Trusts, Second, section 331(a), page 144; III Scott on Trusts, Second Ed., section 330.1, page 2394, and section 331, page 2413; Beemer v. Challas, 224 Iowa 411, 276 N.W. 60; Young v. Young-Wishard, 227 Iowa 431, 288 N.W. 420.

Thus while the instrument was not objectionable as hearsay, it contained material that was inadmissible on other grounds. No attempt was made to limit the offer to relevant portions. Englund v. Younker Brothers, Inc., 259 Iowa 48, 142 N.W.2d 530. However, in this de novo appeal in equity in light of the ruling as made, we consider the other portions of the exhibit.

That portion of the clarification of intent that refers to the assets to go into the trust is not in issue and need not concern us here. Apparently one half of what Mrs. Work got from her husband was to go into the trust in question and the other half was "sold" to plaintiff in return for plaintiff's past services and promise "to provide an adequate income for me throughout the remainder of my lifetime." There is no dispute that the assets in the trust (the record is silent as to whether it is only one half or all of trustor's property from her husband) are not properly there.

We also note the following in the clarification of intent. "The one-half income which he is to report as trustee has been given outright to him as trustee for the benefit of himself and his children and I have no further interest therein and I had no intent to retain any interest therein after February 18, 1955. In the event of any illness or heavy expenses which may occur Jordon M. Work as trustee, may pay all of the trust income to any child named in the trust agreement. My one-half share of income shall always be paid to me, in any event during my lifetime." This passage seems to negate most of plaintiff's contentions here. Ignoring that the trust went to cotrustees, there is a clear expression (1) that trustor "had no intent to retain any interest therein after February 18, 1955." (2) that the trust was for the benefit of plaintiff and his children.

If the attempt to modify the original trust is stricken from the exhibits (as it must be) the only probative force of the re-

908

maining relevant material confirms the trial court's result.— Affirmed.

All JUSTICES concur.