Carol D. BARRON, Plaintiff–Appellee,

v.

Gene H. SNAPP, Jr., Individually, as Executor of the Estate of Gene Harold Snapp, Deceased, and as Co–Trustee of the Gene Harold Snapp Trust Agreement, Davenport Bank and Trust Company, as Co–Trustee of the Gene Harold Snapp Trust Agreement, Defendants–Appellants,

and

Elaine E. Snapp, Defendant,

and

Jane L. Fleck; Dale F. Snapp; and all of the unknown Claimants of the Estate of Gene Harold Snapp, Deceased, and the Gene Harold Snapp, Trust, Defendants–Appellants.

No. 90–0642.

Court of Appeals of Iowa.

Feb. 26, 1991.

John A. Templer, Jr. of Shearer, Templer & Pingel, P.C., West Des Moines, for defendants-appellants.

Robert N. Downer and Timothy J. Krumm of Meardon, Sueppel, Downer & Hayes, Iowa City, for plaintiff-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

OXBERGER, Chief Judge.

The facts giving rise to this appeal stem from the various family trees left by Gene Harold Snapp, Sr., following his four marriages. Gene, Jr. is Gene, Sr.'s son from his third marriage. That marriage ended by dissolution and Gene, Sr., obtained custody of Gene, Jr. pursuant to the dissolution decree. Jane L. Fleck, with whom Gene, Jr. was raised, is the daughter of Gene, Sr.'s fourth wife, Elaine E. Snapp.

Gene, Sr. legally adopted Jane. Carol D. Barron is Gene Snapp, Sr.'s daughter from his second marriage, which only lasted a short period of time. Carol was born in Oklahoma in 1948 shortly before Gene, Sr. and her mother divorced. Pursuant to the dissolution decree, Gene, Sr. paid child support for Carol for a few years after the dissolution. Carol's mother remarried when Carol was six. When Gene, Sr. learned of the marriage he stopped making child support payments. Although Carol used the last name of her mother's second husband, Byrle Dunn, he never adopted her.

Gene, Sr. died on May 31, 1981, leaving a significant estate. Gene, Sr.'s 1979 will which was admitted to probate contained a pour over provision whereby the bulk of Gene, Sr.'s estate passed to a trust created in 1975. Gene, Jr. who is a certified public accountant and lawyer, drafted Gene, Sr.'s 1975 Trust Agreement. He drafted the agreement using standard forms obtained from the accounting firm where he worked in 1975. These standard forms did not direct defining the term "child" by using specific names. Gene, Jr. and the Davenport Bank and Trust Company serve as co-trustees of the Trust.

Gene, Jr. maintains he did not know of Carol's existence at the time he drafted the Trust Agreement. He also testified that at the time he drafted the Trust Agreement Gene, Sr.'s will named only Gene, Jr. and Jane as his "beloved children." Gene, Sr.'s 1979 will did not name any of his children, other than naming Gene, Jr. as executor, and added a provision giving some stock in one of his business enterprises to Dale Snapp, his brother. Gene, Jr. testified he drafted the Trust Agreement to take advantage of changing tax laws and he based calculations on distributions to two children. The Trust Agreement divides the estate into two parts: "A" and "B". Part "A" defines the marital deduction trust fund under which Elaine Snapp is the beneficiary. Part "B" defines the nonmarital trust fund. Its income and principal are to be made available at the co-trustees' discretion to Elaine and Gene, Sr.'s children.

■ We review the interpretation of the Trust Agreement de novo. *In re Estate of Nagl,* 408 N.W.2d 768, 771 (Iowa App. 1987). We give weight to the findings of fact made by the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ The general rules of construction apply when interpreting wills and trusts. *In re Work Family Trust,* 260 Iowa 898, 901, 151 N.W.2d 490, 492 (1967). We resort to technical rules or canons of construction only if the language of a trust is ambiguous or if the settlor's intent is for any reason uncertain. *See Estate of Christensen,* 461 N.W.2d 469, 470 (Iowa App. 1990) (authorities omitted). Where we find the terms of a trust unambiguous, we are precluded from interpreting those terms. *In re Estate of Kiel,* 357 N.W.2d 628, 630 (Iowa 1984).

■ The disputed provision of the 1975 Trust Agreement states:

> Upon the death of the Settlor's wife, or her written renunciation of all interest in Trust Fund B, the Trustees shall divide the balance remaining of Trust Fund B into equal separate shares of such number so that one such share shall be then distributed to each then surviving child of the Settlor and one such share shall be distributed, *per stirpes,* to the descendants of each then deceased child of the Settlor.

The appellants do not dispute Carol is the natural child of Gene, Sr., and was never adopted by Byrle Dunn. The appellants argue that in the circumstances of this case the term "child" is ambiguous and the circumstances surrounding the creation of the Trust Agreement make it clear Gene, Sr. did not intend to include Carol as a beneficiary of his trust.

The trial court found the term "child" as used in the Trust Agreement an unambiguous term. We agree.

In oral argument the appellants relied on the recently decided case *Estate of Christensen,* 461 N.W.2d 469 (Iowa App. 1990) as support for their contention the trial court erroneously failed to find Gene, Sr. did not intend to benefit Carol. We find this reliance misplaced. In *Christensen* we found an obvious mistake in draftsmanship of a will which allowed us to go beyond the words of the will to search for the intent of the testator. We do not find a similar scrivener's mistake in this case.

In *Christensen,* the testator executed a contract providing she would take a life estate in all of her husband's estate instead of the share he left her in his will. Three of her children forewent their share in their father's estate in consideration for their mother's agreement to execute a will leaving all the property to them at her death. The contract specifically named the three children but the will referred only to "my children." The dispute revolved around whether the testator intended to exclude the heirs of a deceased child who had received a specific cash bequest in their grandfather's will.

We found in *Christensen* the testator clearly intended to benefit only her children named in the contract executed in conjunction with her will. *Id.* at 471. This case does not arise simply as the result of a scrivener's mistake. Gene, Sr. clearly knew Carol existed and she was his daughter even though he apparently did not attempt to maintain any relationship with her. If he did not want her to be a beneficiary of his Trust, he could have specifically excluded her. The term "child" in the Trust Agreement is not ambiguous. We find no reason to exclude one of the settlor's daughters merely because he did not maintain a relationship with her during his lifetime. Parents cannot simply rid themselves of their children by passive omission.

In light of this decision we need not address the appellant's contentions regarding Gene, Sr.'s intent. The Trust Agreement does not require interpretation with respect to the term "child."

AFFIRMED.

SCHLEGEL, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority in all respects except, rather than distinguishing *Estate of Christensen,* 461 N.W.2d 469 (Iowa App. 1990), I would overrule it for all the reasons set forth in my dissent in *Christensen,* 461 N.W.2d 471–72.