## IN THE COURT OF APPEALS OF IOWA

No. 17-1581
Filed October 24, 2018

**IN THE MATTER OF THE LUELLA TAYLOR TRUST,**

**and**

**IN THE MATTER OF THE QUENTIN L. TAYLOR TRUST.**

**STANLEY R. TAYLOR and GREGORY L. TAYLOR,**
        Appellees.
_____

        Appeal from the Iowa District Court for O'Brien County, David A. Lester,
Judge.


        A beneficiary appeals a district court order finding he no longer had an
option to purchase the farmland held in his parents' trusts. **REVERSED AND
REMANDED.**


        William K. Klinker of Smith, Grigg, Shea & Klinker, PC, Primghar, for
appellant Bradley D. Taylor.

        Kyle S. Irvin of Corbett, Anderson, Corbett, Vellinga & Irvin, LLP, Sioux City,
for appellees.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Judge**

This appeal involves a dispute among sibling-beneficiaries over the interpretation of language in their parents' irrevocable trusts directing the sale of farmland. Bradley Taylor, the son who farmed, seeks to exercise a trust provision giving him "the first opportunity to purchase" the land. The district court decided Bradley's opportunity expired when the three-year period set in the trust lapsed without agreement to a sale by all six siblings. Bradley asks us to reject that interpretation. Because the trust language shows the parents intended Bradley have a chance to buy the land without each sibling having veto power, we reverse the district court order and remand for further proceedings.

## I.     Facts and Prior Proceedings

In 1999, Luella and Quentin Taylor established identical revocable trusts to direct the distribution of their assets to their six living children: Bradley, Monette, Roann, Stanley, Rodney, and Gregory. Both parents signed a first amendment to their trusts in 2002 and a second amendment in 2008. This appeal focuses on the first amendment to Article IV(D)(3) and the following disputed language:

> I request that my trustee keep all of my farm real estate [intact] for a period of three (3) crop years from the death of trustor's wife or the trustor, whichever occurs later and during the three (3) year period my trustee shall rent my farm real estate to my son, Bradley D. Taylor under the terms and conditions that existed at the time of my death or my wife's death, whichever occurs later. No sale shall occur during this period unless all my children agree otherwise.
>
> Additionally, if and when any of my farm real estate is sold, I direct that my son, Bradley D. Taylor shall be afforded the first opportunity to purchase any or all of my farm real estate at a price agreeable with all my children. If they are unable to agree, then I grant to my son, Bradley D. Taylor, the exclusive right and option to purchase any or all of my farm real estate at a price to be arrived at by my son, Bradley D. Taylor, selecting an appraiser knowledgeable in farmland values in Northwest Iowa;

my remaining children shall select an appraiser knowledgeable in farmland values in Northwest Iowa, and the two (2) appraisers selected shall pick a third appraiser knowledgeable in farmland values in Northwest Iowa and the average price determined by the appraisers shall constitute the value of the farmland for purposes of sale to my son, Bradley D. Taylor. My son, Bradley D. Taylor, shall have sixty (60) days after the appraisal is completed to determine whether to exercise this option. If my son, Bradley D. Taylor, does exercise his option granted herein, he shall file the election with the O'Brien County Clerk of Court within sixty (60) days of the appraisal date. If no election is filed within the sixty (60) days of the appraisal, the option shall expire and my children shall dispose of my farmland as my trustee shall determine to be in the best interest of the trust.[1]

According to their terms, the trusts became irrevocable after both Luella and Quentin died. Luella died on March 29, 2014. Quentin died on October 3, 2014.

In late October 2014, the district court approved the appointment of Security State Bank of Sutherland, Iowa, as the trustee for both trusts.[2] In crop years 2015, 2016, and 2017, Bradley rented the 340 acres of farmland held in the trusts.

As the three years following Quentin's death drew to a close, the bank and beneficiaries engaged in a flurry of filings about the sale of farmland contemplated in the trusts, listed chronologically below.

(1) In July 2017, the trustee bank applied for orders on the sale of the farmland. *See generally* Iowa Code § 633A.6202(2)(a) (2017) (allowing trustee to petition the court to "[c]onstrue and determine the terms of a trust"). The bank

---

[1] The amendment deleted the final two sentences from this section:
> My son, Bradley D. Taylor, shall be allowed ten (10) years to pay for the farmland and payments shall be made to my remaining children over a ten (10) year period in equal annual installments with installments due on March 1 each year with interest at the rate which shall remain one percent (1%) below that rate charged by the Farm Credit Services, Sheldon, Iowa, for prime customers, adjusted each March 1. Prepayment shall be permitted at the discretion of my son, Bradley D. Taylor.

[2] This appointment followed the resignation of Stanley Taylor as trustee.

asserted the wording of the Taylors' trusts left several issues unaddressed, including:

 a. The deadline, method and timing for parties to name their respective appraisers;
 b. The date to be used to determine the value of the land;
 c. The breakdown of parcels to be sold;
 d. The meaning of "date of appraisal" and how notice of the appraisal amount is given to Bradley D. Taylor;
 e. The closing date for a sale to Bradley; and
 f. Whether the trustee is to be the party that disposes of land that is not purchased under the option.

(2) In response to the bank's application, Stanley nominated certified appraisers of farmland from Peoples Company, a real estate appraisal firm in Clive. His filing acknowledged Bradley had "the exclusive right and option to purchase any or all of the farm real estate that is part of the trusts."

(3) Bradley responded to the bank's application and objected to Stanley's nomination of an appraiser. Bradley believed the trust contemplated that he select one appraiser and the other five beneficiaries jointly select another appraiser.

(4) In late July, beneficiaries Monette, Roann, and Rodney nominated a certified appraiser from Spirit Lake. They interpreted the trust to require the appointment of three appraisers: one by Bradley, another by the remaining children and a third appraiser selected by the other two appraisers. All three appraisers were to produce written values, which the trustee would average to determine the price of Bradley's option to purchase the real estate.

(5) Also in late July, Stanley and Gregory jointly objected to the bank's application for orders on the sale of the farmland and the nomination of appraisers. Their objection argued the wording of the amended trusts "leaves open the interpretation that the provisions regarding Bradley Taylor's interests in the sale

may, in fact, be a right of first refusal rather than an affirmative option to purchase."

Stanley and Gregory reasoned:

> It is unclear why there would be a contingent triggering trust clause at the beginning of the section which begins with the phrase "if and when any of my farm real estate is sold," if the Grantors truly intended there to be no discretion to sell regarding an affirmative option that Bradley Taylor had to purchase the property after three years. The Trustee's Application seems to presume an affirmative option, rather than a responsive right of first refusal. The interpretation of this particular clause has far ranging effects regarding whether all parcels are required to be affirmatively offered at this point or whether parcels could be distributed from the Trust in kind to beneficiaries.

(6)    The trustee bank responded to Stanley and Gregory with the following opinion:

> [T]he best method of final distribution of the Trust assets is to sell land and distribute cash. It is obvious that if the heirs take individual ownership, there will be further litigation—a partition action, perhaps the appointment of a receiver, and ultimately a trial. The time and expense of such litigation is unnecessary if the Trustee sells the land and then distributes cash. Therefore, the Trustee has made a decision to sell as part of the winding up of the Trusts. Presumably the heirs do not agree on a price. Consequently, the option provisions of the Trust are in effect.

The district court conducted a hearing on the trustee's application and the objections in late August 2017. The court took no evidence but heard oral arguments from counsel for the trustee bank and beneficiaries.[3]

In September 2017, the district court denied the trustee's proposal as outlined in its July application. Finding "no ambiguity in any of the terms giving rise to the issues" before it, the district court interpreted the trust language differently from the position advanced by all parties. The district court stepped through its analysis:

---

[3] We have no record of the oral arguments presented at that hearing.

Once Quentin passed away on October 3, 2014, all of the assets of these trusts became assets of the residuary trust pursuant [to] Article IV(D) of the original trust agreements. At that point in time, the Trustee was under an obligation to divide the assets of the residuary trust into equal shares for all of Quentin and Luella's then surviving children, distribute those shares to each child, and then terminate the trust.

Under the district court's view, the trustee's authority to act was only limited "to not selling any farmland in the residuary trust for a period of 3-years after Quentin's death because Article IV(D)(3) of the first amendments required that land be rented to Bradley." According to the district court's reading: "Once the required 3-year rental period expires on October 3, 2017, the Trustee is permitted, but certainly is not required to sell any or all of the farm real estate remaining as an asset of the residuary trust pursuant to the power granted to it by Article VII(1)." The court believed the purchase options for Bradley and the appraisal requirements in the amended version of Article IV(D)(3) "applied only to a sale of the farmland that could have occurred by agreement of . . . all the surviving children during the 3-year rental period." Because the beneficiaries did not agree to a sale during those three years, the district court decided the trustee bank only needed "to ensure that any sale of the farmland is in the best interest of the trust and its beneficiaries as generally required by Iowa's Trust Code."

Bradley challenges the district court order.[4] His brothers, Stanley and Gregory, defend the district court's decision.[5]

---

[4] On September 29, 2017, the same day as he filed the notice of appeal, Bradley filed an "Election to Exercise Option" placing the trustee and his siblings on notice of his intent to purchase the farmland at issue.

[5] The three remaining beneficiaries—Monette, Roann, and Rodney—filed a statement in support of Bradley's position on appeal.

## II.    Scope of Review

Because the district court was sitting in probate to decide the ongoing administration of the Taylors' trusts, its jurisdiction was in equity.  *See* Iowa Code §§ 633.10(4), 633.33.   The parties agree our review is de novo.   *See In re Steinberg Family Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017).

## III.    Analysis

In deciding Bradley's appeal, we focus on a single question: how did Quentin and Luella intend for the trustee to distribute their farmland?  The words of their trust agreements are "the most persuasive and reliable indicator" of their intent.  *See In re Tr. of Killian,* 459 N.W.2d 497, 501 (Iowa 1990).  In seeking the intent of these settlors,[6] we must construe the language of the trust instruments as a whole.  *See In re Work Family Tr.*, 151 N.W.2d 490, 492 (Iowa 1967).  In doing so, we must "reconcile all provisions of the trust when reasonably possible." *Steinberg*, 894 N.W.2d at 468.  We will resort to technical rules or canons of construction only if the trust language is ambiguous or if the settlors' intent is somehow unclear.  *Barron v. Snapp*, 468 N.W.2d 841, 843 (Iowa Ct. App. 1991).

Minding those principles, we turn to the parties' positions.  Bradley contends the district court misread the trust language as limiting his option to purchase the farm real estate to the three years following his father's death.  In support of his contention, Bradley proposes two alternative remedies.  First, Bradley argues because the trustee's decision to sell the land triggered his option to purchase, we

---

[6] A settlor is "a person, including a testator, who creates a trust."   Iowa Code § 633A.1102(15).

should reverse and remand for the district court to reconsider the trustee's questions about the sale. Alternatively, if we find the trust language to be ambiguous, he contends we should remand with directions for the district court to consider extrinsic evidence of the settlors' intent. Because we adopt the former, it is unnecessary for us to reach the alternative.

Article IV(D)(3) of the trusts addresses the Taylors' farm real estate.[7] The opening paragraph expresses the parents' desire to keep their farm intact for three years after the death of the surviving settlor. During those three years, the parents ensured Bradley would be able to continue renting the property under the same terms as he had when they were living. The first paragraph of Article IV(D)(3) also prohibits the trustee from selling the land during those three years unless all of the Taylors' children agreed.

Key to Bradley's argument is the transitional phrase beginning the second paragraph: "Additionally, if and when any of my farm real estate is sold . . . ." In the district court, Stanley and Gregory argued that phrase was a "contingent" clause triggering Bradley's "responsive right of first refusal" if the trustee chose to sell the farm real estate. On appeal, Bradley generally agrees with that assessment. More particularly, Bradley asserts the word "if" creates a condition precedent to his option to purchase the farmland. Bradley argues the trustee's decision to sell the land satisfied that condition precedent.[8]

---

[7] The language at issue remained unchanged from the original to the amended version of the trusts.

[8] In his brief, Bradley suggests two alternative ways to meet that condition precedent: (1) all the siblings agree within the three years to sell the farmland or (2) final distribution of the trust assets. Bradley argues filings by the siblings during the three-year period show a tacit agreement to sell the farm real estate. He also asserts his option to purchase would

By contrast, Stanley and Gregory now embrace the district court's conclusion that Bradley's option to purchase was contingent on all the children agreeing to a sale *during* the three years following the surviving settlor's death. Stanley and Gregory contend interpreting the trusts otherwise would "render meaningless nearly every provision of Article VII [of the trusts] related to the sale of real property." They note Article VII provides the trustee with "all powers necessary for the proper administration of each trust created by this Agreement," including these powers:

> 1.  To sell, exchange, borrow, mortgage, lease, or otherwise dispose of any asset for terms within or extending beyond the terms of any trust.
>
> . . . .
>
> 7.  To purchase property from, sell property to, or otherwise deal with the executor, trustee or other representative of the estate or trusts, even though the trustee be such executor, trustee or representative.
>
> . . . .
>
> 12. To develop and subdivide any real property; to dedicate; to vacate; to sell on any terms; to grant options to purchase or lease; to donate, mortgage or pledge, to lease for any period of time, even extending beyond the term of the trust, to partition or to exchange property; to grant or release easements and interests; generally, to deal with any real property the same as the trustor could have as the individual owner.

Stanley and Gregory contend only the district court's interpretation gives meaning and effect to both Article IV(D)(3) and Article VII. In their view, the district court's

---

"run with the land" after the trustee distributed the assets among the beneficiaries. Because we accept Bradley's first argument, we need not reach his other two contentions.

interpretation "removes any alleged ambiguity and gives meaning to each provision of the Trusts."

This argument is not persuasive. As Bradley notes, Article VII is "an administrative tool" available to carry out the other trust provisions. He asserts the general administrative powers listed in Article VII would not trump the settlors' specific wishes for selling their farmland expressed in Article IV(D)(3). He points to language in Article IV(D)(2) directing the trustee to distribute the residuary trust to the beneficiaries and terminate the trust "limited by the provisions of Paragraph D.3."

Bradley offers the more sensible interpretation of the language in his parents' trusts. What happened to the farmland after they were gone was important to Luella and Quentin. *See Killian*, 459 N.W.2d at 499 (explaining the settlor's "intent is to be determined from the language of the instrument, the scheme of distribution, and the facts and circumstances surrounding the document's execution"). The parents wanted to preserve Bradley's opportunity to continue farming. But they also wanted their other children to receive fair shares from any land sale.

In the first paragraph of Article IV(D)(3), the Taylors articulated their intent to keep their farm intact and for Bradley to continue leasing the property for three crop years after the surviving spouse's death. The Taylors did not want the property sold during those three years unless all six children agreed. In the next paragraph, the Taylors addressed Bradley's "opportunity to purchase any or all" of the farm real estate. That second paragraph detailed how their children could arrive at an agreeable price for the farm property by averaging various appraisals.

In the end, the district court's interpretation does not square with the settlors' stated goals for the future of their farmland and the involvement of their children. *See In re Estate of Spencer*, 232 N.W.2d 491, 497 (Iowa 1975) (emphasizing courts are "bound to carry out" testator's intent). The district court's perceived time limit on Bradley's exercise of his option to purchase does not appear in paragraph two of Article IV(D)(3). Instead, paragraph two contemplates Bradley having the option to buy any or all of the farm real estate at market value, as determined by knowledgeable appraisers. The district court's opinion Bradley could only exercise his option during the three-year rental period described in the first paragraph gives each sibling veto power over Bradley's ability to purchase the land. No sale could occur during those three years without all siblings signing off. That restrictive interpretation defeats the settlors' intent to allow Bradley to continue farming as expressed in both paragraphs of Article IV(D)(3). The phrase "if and when" places no deadline on the trustee's sale of the real estate. We find the settlors' intent to extend Bradley an option to purchase the land beyond the three-year rental period was plain on the face of this distribution provision.

The district court misinterpreted the trust language. We reverse and remand for a determination of the questions posed in the trustee's application on sale of the farm real estate to Bradley.

**REVERSED AND REMANDED.**