STATE of Iowa, ex rel. Lynda
BUECHLER Appellant,

v.

Roger VINSAND, Appellee.

No. 66704.

Supreme Court of Iowa.

April 21, 1982.

Douglas L. Tindal, Asst. County Atty.,
Washington, for appellant.

Dan T. McGrevey, Fort Dodge, and D.
Bradley Kiesey, Washington, for appellee.

Considered by LeGRAND, P.J., and
HARRIS, McCORMICK, LARSON and
SCHULTZ, JJ.

McCORMICK, Justice.

Petitioner Lynda Buechler appeals from
an adverse decree in an action to establish
paternity and obtain support pursuant to
chapter 252A, The Code. The determina-
tive questions are whether the trial court
erred in excluding evidence of blood test
results and in finding petitioner failed to

sustain her burden of proof. We hold that the court erred on both questions. Therefore we reverse the decree and remand for an order fixing support.

■ Respondent Roger Vinsand has not filed an appellee's brief. That failure does not entitle petitioner to a reversal as a matter of right but does provide a basis for sanctions. In the present case, we will limit our consideration of issues to those raised in petitioner's brief, and we will not go beyond the controverted rulings of the trial court in searching for theories upon which to affirm the decree. *See Jefferson County v. Barton-Douglas Contractors, Inc.*, 282 N.W.2d 155, 157 (Iowa 1979); *Pringle Tax Service, Inc. v. Knoblauch*, 282 N.W.2d 151, 153 (Iowa 1979).

The crucial trial court rulings were the court's refusal to consider the blood test results proffered by petitioner and its finding on the merits of the paternity issue.

I. *Admissibility of the blood test results.* Admissibility of the blood test results turns on the applicability and construction of section 675.41, The Code. Section 675.41 became effective January 1, 1981. It provides:

> In any proceeding to establish paternity in law or in equity the court may on its own motion, and upon request of a party shall, require the child, mother, and alleged father to submit to blood tests. If a blood test is required, the court shall direct that inherited characteristics, including but not limited to blood types, be determined by appropriate testing procedures, and shall appoint an expert qualified as an examiner of genetic markers to analyze and interpret the results and to report to the court. Blood test results which show a statistical probability of paternity are admissible and shall be weighed along with other evidence of the alleged father's paternity. If the results of blood tests or the expert's analysis of inherited characteristics is disputed, the court, upon reasonable request of a party, shall order that an additional test be made by the same laboratory or an independent laboratory at the expense of the party requesting additional testing. Verified documentation of the chain of custody of the blood specimens is competent evidence to establish the chain of custody. A verified expert's report shall be admitted at trial unless a challenge to the testing procedures or the results of blood analysis has been made before trial. All costs shall be paid by the parties in proportions and at times determined by the court.

The present action was brought in 1979, and respondent was compelled to submit blood samples for testing by an order entered during that year. Through a request for admissions filed in 1980, petitioner disclosed the test results and gave respondent notice of her intention to rely on the statute for their admissibility. Although respondent denied the request for admissions, he did not urge any pretrial objection to the admissibility of the test results. The case was tried in April 1981.

At trial, petitioner offered the test results, consisting of a report, an explanatory letter, and an affidavit concerning test procedures and interpretation. Respondent objected to admissibility of the documents. Among other grounds, he asserted section 675.41 was inapplicable because the testing was done prior to its effective date and the documents were hearsay. No attempt was made to lay a foundation for admissibility of the documents under the business records exception in section 622.28 or under any other hearsay exception. The hearsay ground is sufficient to support the court's ruling sustaining the objection unless section 675.41 applies and exempts the test results from the hearsay rule. *See State v. One Certain Conveyance*, 211 N.W.2d 297, 300 (Iowa 1973) ("the report prepared by Iowa Criminalistics Laboratory was hearsay evidence, which, unless exempted by the statute under review, was inadmissible"). Thus, the threshold issue is whether section 675.41 applied in this case.

■ Although this issue is ordinarily discussed in terms of whether a statute is prospective only and not retrospective, the true issue is whether the statute is remedial

or procedural rather than substantive. *Estate of Parsons*, 272 N.W.2d 16, 17–18 (Iowa 1978). Remedial and procedural statutes do not come within the legal concept of retrospectivity. That term is relevant only to statutes that create or take away vested rights. *Id.* at 18. The point is illustrated by cases construing section 4.5, which states that a statute "is presumed to be prospective in its operation unless expressly made retrospective." Section 4.5 is taken from section 14 of the Uniform Statutory Construction Act, which the drafters pointed out is not intended to apply to remedial or procedural statutes. *See Smith v. Korf, Diehl, Clayton. & Cleverley*, 302 N.W.2d 137, 138–39 (Iowa 1981). Thus, notwithstanding section 4.5, the court has applied remedial and procedural statutes to proceedings pending on the effective date of the enactment. *See, e.g., State ex rel. Leas In Interest of O'Neal*, 303 N.W.2d 414, 419–20 (Iowa 1981). Moreover, even when only part of an enactment is remedial or procedural, effect is ordinarily given to that part. *See Schultz v. Gosselink*, 260 Iowa 115, 121, 148 N.W.2d 434, 437 (1967).

■ To the extent section 675.41 affects the admissibility of blood test results, it does not create or divest a substantive right but merely establishes a rule of evidence. Thus, at least to that extent it is applicable to proceedings that were pending on its effective date. *See O'Neal*, 303 N.W.2d at 419–20. We therefore conclude that section 675.41 governed the admissibility of the blood test results in the present case.

■■ Because the statute makes a verified expert's report admissible at trial "unless a challenge to the testing procedures or the results of blood analysis has been made before trial," the evidence is exempt from the hearsay rule. The provision for pretrial objections to the test procedures and validity is intended to allow the trustworthiness of the evidence to be determined before trial to obviate the necessity of personal testimony by the blood analyst. Furthermore, because no pretrial objection was urged by respondent, he lost the right to object on any other ground to admissibility of the results. This includes the chain of custody ground relied on by the trial court. We do not decide whether the documentation of chain of custody met the statutory standard in the present case.

The trial court erred in excluding the blood test results from evidence.

■ II. *The merits of the case.* Because the action was in equity, we review the record de novo. In doing so, we have the whole record before us. This enables us to consider evidence erroneously excluded by the trial court and to omit from our consideration any evidence to which valid objection was made. *See In re Scarlett*, 231 N.W.2d 8, 10 (Iowa 1975); *In re Work Family Trust*, 260 Iowa 898, 907, 151 N.W.2d 490, 495 (1967).

■ This means we consider the blood test results, and it means we disregard respondent's own testimony on the paternity issue. Respondent's testimony was offered on cross-examination during petitioner's case-in-chief after he had been interrogated by petitioner's counsel on direct examination solely on economic issues. Petitioner lodged a timely objection that the cross-examination exceeded the scope of direct examination, and the objection was valid. *See State v. Cuevas*, 288 N.W.2d 525, 530 (Iowa 1980).

Petitioner's evidence thus consists principally of the blood test results and her testimony that she had sexual relations with respondent on one occasion and with no one else during the period conception occurred. Respondent's main evidence consists of testimony by a woman friend that respondent was with her and not with petitioner at the time petitioner claimed the child was conceived.

The blood test report showed that samples of blood from petitioner, respondent, and the child had been received by the Minneapolis War Memorial Blood Bank on September 6, 1979. It listed results of analysis of the samples for hereditary factors in fifteen separate gene systems. Each system was assigned a resulting index figure. The cumulative paternity index was shown

as 50.5207. Plausibility of paternity was asserted to be "greater than 98.059%."

The explanatory letter from blood bank director Herbert F. Polesky, M.D., discussed the test results:

On the attached protocol are the results obtained in our laboratory on blood specimens from the individuals listed. These samples were tested for hereditary factors to establish whether the alleged father might be or is not one of the biological parents of the child in question. Shown are the most probable phenotypes (observed genetic characteristics) for these individuals and the probability that the alleged father compared to random man could have contributed the expected paternal genes.

From the testing on the genetic systems shown on the attached protocol, falsely accused males will be excluded in 92% to 95% of cases. The results obtained in this case do NOT provide evidence of non-paternity, for the alleged father.

Since parentage can not be excluded for the alleged father, the test results have been used to calculate a Paternity Index (PI). This index estimates the chance that the alleged father could be a parent of this child. The Paternity Index is a ratio establishing the number of unrelated random men that would have to be tested to find another with all the appropriate genes to have fathered the child in question. This index (50.52) converted to a percent (98.06%) indicates the plausibility of Roger Vinsand being the father of Joshua J. Buechler.

The significance of this evidence must be weighed with other factors in this case, such as access by the alleged father or other individuals proximate to the time of conception.

Dr. Polesky also executed the affidavit:

I, Dr. Herbert F. Polesky, M.D., first being duly sworn on oath, depose and say:

1. That I am a board certified pathologist, and I have been director of The Minneapolis War Memorial Blood Bank, 2304 Park Avenue, Minneapolis, Minnesota 55404, since July, 1964.

2. That, under my supervision, blood specimens of the three above-named individuals were tested at The Minneapolis War Memorial Blood Bank, for hereditary factors to establish whether the alleged father might be one of the biological parents of said child.

3. Said blood specimens from all three individuals were received at The Minneapolis War Memorial Blood Bank in acceptable condition, and pursuant to this facility's instructions. Said blood specimens were properly sealed, labeled, and packaged for shipment such that there was no foreign matter which could cause false test results, and there was no possibility of mistaking one person's sample for another.

4. The tests used in this disputed paternity case involving the blood specimens of the above individuals are generally accepted in the fields of pathology and serology as being very reliable. The tests results allow me to express an opinion within a reasonable degree of medical certainty that the alleged father is the biological father of the above-named child.

5. Attached hereto is my verified written opinion that said alleged father cannot be excluded as biological father of said child, along with the applicable "paternity index number" (ie statistical probability of paternity).

We have no occasion to decide the merits of possible pretrial objections to admissibility of the test documents in the present case. We recognize, however, that besides exempting test results from the hearsay rule, section 675.41 constitutes a legislative determination of the relevancy of results "that show a statistical probability of paternity." Much has been written concerning serologic testing in paternity cases. *See* Imwinkelried, *A New Era in the Evolution of Scientific Evidence—A Primer on Evaluating the Weight of Scientific Evidence*, 23 Wm. & Mary L. Rev. 261, 270–72 (1981); Comment, *Proving Paternity by Serological Testing: Should It be Admitted as Evidence by the Courts?*, 1981 Det.C.L.Rev. 47; Comment, *The Use of Blood Tests in Ac-*

*tions to Determine Paternity*, 16 Wake Forest L. Rev. 591, 597–606 (1980); Ellman & Kaye, *Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?*, 54 N.Y.U. L.Rev. 1131 (1979); *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976).

Results have been held admissible in several jurisdictions. *See Cramer v. Morrison*, 88 Cal.App.3d 873, 153 Cal.Rptr. 865 (1979); *Carlyon v. Weeks*, 387 So.2d 465 (Fla.Ct. App.1980); *Malvasi v. Malvasi*, 167 N.J.Super. 513, 401 A.2d 279 (1979); *Commissioner of Social Services v. Lardeo*, 100 Misc.2d 220, 417 N.Y.S.2d 665 (Fam.Ct.1979); *State v. Meacham*, 93 Wash.2d 735, 612 P.2d 795 (1980). Although test results were held inadmissible on foundation grounds in *Phillips ex rel. Utah Department of Social Services v. Jackson*, 615 P.2d 1228 (Utah 1980), the court recognized the efficacy of the tests.

■ Considering all of the admissible evidence in the present case, including the blood test results, we find that petitioner established her claim of paternity by a preponderance of the evidence. *See Moody v. Christiansen*, 306 N.W.2d 775, 777 (Iowa 1981).

We remand to permit the trial court to set the terms of respondent's support obligation.

REVERSED AND REMANDED.