Lillith Joy HARTMAN and Rhea Robin Hartman, Minors, by Their Next Friend Janet HARTMAN, Appellees,

v.

Constantine STASSIS, Appellant.

No. 91–1269.

Court of Appeals of Iowa.

May 25, 1993.

Raymond Rosenberg of The Rosenberg Law Firm, Des Moines, for appellant.

Thomas J. McCann of Peddicord, Wharton, Thune & Spencer, A Professional Corp., Des Moines, for appellees.

Considered by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

Stassis appeals and Hartman cross-appeals the district court's adjudication of Stassis's paternity of Hartman's two children. Stassis contends the trial court erred by: (1) finding the blood testing results, when combined with other evidence, established that Stassis is the father of both children; (2) admitting evidence of the probability of paternity based on a comparison of blood with that of men from a data base comprised entirely of European Caucasian men; (3) considering hearsay statements contained within law review articles; (4) concluding the defense of laches was not established; (5) establishing a support obligation on Stassis when the lesbian mother of the children falsified records to obtain public assistance; and (6) denying him a jury trial in violation of his constitutional rights. On cross-appeal, Hartman contends the child support award is inadequate, and she argues she should be awarded attorney fees.

Constantine Stassis is a physics professor at Iowa State University. He met Janet Hartman who worked as a secretary for the physics department. The two became friends and developed a casual and sporadic sexual relationship which lasted between 1978 and the beginning of 1986. During this time period, Stassis lived with a companion whom he described as a common law wife. Hartman, a lesbian, lived with her lover, Susan.

Hartman is the natural mother of Lillith Joy Hartman, born April 3, 1981, and Rhea Robin Hartman, born April 19, 1985. Since 1981, and through trial, Hartman has been unemployed and has lived on ADC. She received $426 per month in ADC benefits and $275 in food stamps. By 1990, Stassis earned in excess of $100,000 annually.

On July 21, 1989, Hartman filed a petition in equity seeking to establish paternity and child support. She named Stassis as the father of her two children even though when she applied for public assistance she maintained that the father of her two children was unknown. Stassis denied paternity and presented evidence that Hartman had purposefully engaged in sexual relations with several men so that she could have children to raise in a homosexual environment while supporting the children with public assistance.

Hartman presented testimony that she had engaged in sex with Stassis during the relevant time periods. Stassis disputed the evidence. Hartman also presented expert testimony concerning the results of blood tests which indicated that the probability Stassis was the father of Lillith was 99.-896711 percent and the probability he was the father of Rhea was 99.9977529 percent.

Although Stassis disputed the calculations of probability, the district court determined that Stassis is the biological father of both children. The court directed Stassis to pay child support to Hartman in the sum of $1,200 per month retroactive to July 21, 1989, to be paid until each child reaches age eighteen. When there is only one dependent child, the support award will be reduced to $950 per month. In addition, the court ordered Stassis to provide health insurance for his daughters and to pay one-half of all their uninsured health benefits. No attorney fees were awarded. Stassis appeals; Hartman cross-appeals. We affirm.

■ The present case is an action in equity brought under Iowa Code chapter 252A (1989). Review in equity cases shall be de novo. Iowa R.App.P. 4. The petitioners' burden of proof is to establish paternity by a preponderance of the evidence. *In re Marriage of Schneckloth*, 320 N.W.2d 535, 536 (Iowa 1982); *Moody v. Christiansen*, 306 N.W.2d 775, 777 (Iowa 1981).

On appeal, Stassis first contends the district court incorrectly found that the blood testing results, when combined with other evidence, established by a preponderance of the evidence that Stassis is the father of Lillith and Rhea. Stassis claims the evidence does not support a finding that he had sexual intercourse with Hartman during the periods of time when conception of the children occurred. In addition, Stassis argues that the probabilities of paternity produced in the current case are invalid because: (1) the statistical analysis used to determine the probabilities was faulty; and (2) the serologists used an incorrect data base in evaluating the probabilities. We find these arguments to be unpersuasive.

■ The use of blood-grouping tests in proving paternity is highly probative. *Little v. Streater*, 452 U.S. 1, 6–8, 101 S.Ct. 2202, 2205–06, 68 L.Ed.2d 627, 632–34 (1981). Blood tests are probative, because "there is seldom accurate or reliable eye-witnesses since the sexual activities usually take place in intimate and private surroundings, and self-serving testimony of a party is of questionable reliability." *Id.* Traditional blood tests do not prove paternity. The tests prove nonpaternity, excluding from the class of possible fathers a high percentage of the general male population. *Mills v. Habluetzel*, 456 U.S. 91, 98, 102 S.Ct. 1549, 1554, 71 L.Ed.2d 770, 777 (1982). The fact that a certain male is not excluded by the blood tests does not, in and of itself, prove that he is the child's natural father. It only proves the male is a member of the limited class of possible fathers. Recent developments in the field of blood testing have sought not only to prove nonpaternity, but also to predict paternity with a high degree of probability.

Two of the major type of blood tests used in paternity testing are the red cell blood-grouping tests and the HLA test. Doctor Russell Mahoney, a pathologist at Iowa Methodist Medical Center in Des Moines, performed the tests and testified as to the results. It must be noted that Stassis has no dispute with the testing procedures used by Dr. Mahoney. Stassis does not take issue with the quality control methods, and he agrees with the genetic markers as found in Dr. Mahoney's report. Stassis has further acknowledged on the witness stand that he is not excluded from paternity.

The principal non-serological factor which Stassis contests is his involvement in sexual intercourse with Hartman during the time periods of conception. After carefully reviewing the record and considering the parties' arguments, we agree with the district court's conclusion:

It is, however, inescapable that Constantine had a long term sexual relationship with Janet and that they were having intercourse in the general time periods

involved for both children. When all of the evidnece [sic] bearing on intercourse at the appropriate times is considered it is more likely than not Constantine [Stassis] had intercourse with Janet [Hartman] during a period of time when conception of both Lillith and Rhea could have occurred.

The primary issue in this case is the weight to be afforded the statistical computations which show the probability of Stassis's paternity of Lillith is 99.896711 percent and of Rhea is 99.9977529 percent. The tests used in this disputed paternity case involving blood specimens of the individuals involved are generally accepted in the fields of pathology and serology as being very reliable. *State ex rel. Buechler v. Vinsand*, 318 N.W.2d 208, 211 (Iowa 1982).

Here, Dr. Mahoney testified that the probability that a mating of the known mother and a particular nonexcluded putative father would produce a child with the genetic markers in question can be calculated. Once the markers are identified, frequency tables are consulted which calculate the frequency with which the particular antigen pairs in question occur in the general population of a particular ethnic group. The combined frequencies of the specified HLA, ABO, MN, and Rh factors result in a probability that the putative father is the natural father.

The actual calculations used are based upon a mathematical probability theorem, introduced by Thomas Bayes, known as "Bayes' Theorem." In the testing for paternity, pathologists apply the theorem differently, based upon a modification applied by Essen–Mollen. This is the essence of Stassis's objection to the pathologist's calculation. Stassis would have the calculation made solely from a group made up of "the men who had access during the time of fertility and conception." To do so, however, ignores the many peculiar attributes of paternity determination.

If a group of putative fathers was being considered, a computation of the probability of paternity for any among that group would be possible by direct application of Bayes' Theorem. *See* Terasaki, *Resolution by HLA Testing of 1000 Paternity Cases not Executed by ABO Testing*, 16 J.Fam.Law 543, 549 (1977–78). However, such a study is impossible in a typical paternity case since the precise makeup of such a group of putative fathers can not be provided. For this reason, a comparison of a nonexcluded putative father with a hypothetical man who is assumed to be random with respect to his antigen markers and to be unrelated to the putative father is made. The probability that a mating of the known mother with the randomly chosen man would produce a child with the genetic markers in question is computed with the use of frequency tables.

The probability of paternity for the putative father, then, is the ratio of his probability to the sum of the probabilities of both men (himself and the randomly chosen hypothetical man). This is the Essen–Mollen version of Bayes' Theorem generally accepted and applied in the fields of pathology and serology. The paternity probability is a measure of likelihood based solely on serological information apart from any nongenetic evidence for or against paternity. The calculation is a guide, useful to the court, which is combined with other factors to determine whether or not the putative father is the natural father of the child in question.

In *Vinsand*, the Iowa Supreme Court held that HLA test results indicating a 98.6 percent probability of paternity established the petitioner's claim of paternity by a preponderance of the evidence when weighed with all other evidence. We find the evidence in the present case to be sufficient to establish paternity.

Stassis also asserts the trial court erred by admitting evidence of the probability of paternity based on a comparison of the blood and HLA of Stassis with that of men from a data base comprised of European Caucasian men. There is no dispute that Stassis is of Greek origin. Dr. Mahoney testified that this data base, used in determining the probability of paternity, is among those data bases generally accepted

among pathologists and serologists in paternity testing. Accordingly, this evidence is admissible as part of Dr. Mahoney's expert opinion. The fact that Dr. Mahoney stated in voir dire he did not know how many persons were represented in the data base or how many of those represented were of Greek origin goes to the weight to be afforded the evidence, not to its admissibility.

■ We also disagree with Stassis's argument that the trial court committed reversible error in referencing statements contained within law review articles when rendering its findings of fact and conclusions of law. The three law review articles of which Stassis complains are all referenced in *Kofford v. Flora*, 744 P.2d 1343, 1348–49 (Utah 1987). A plain reading of the district court's ruling in the present case reveals the court was not relying on articles "outside the record" as Stassis asserts. The district court cites *Kofford* to support the proposition that a preliminary determination must be made concerning sexual intercourse before inclusive HLA testing can have any validity. *Id.* at 1352. All three articles are cited by the Utah court to support this proposition, a proposition which Stassis relies upon in his brief.

In addition, courts which have addressed paternity testing issues have cited heavily to learned treatises in an effort to explain the particulars of such tests. Our own supreme court has cited one of the complained-of articles in the *Vinsand* case. *Id.*, 318 N.W.2d at 211–12.

■ Likewise, we reject Stassis's argument that the petitioners' paternity claim is barred by the equitable defense of laches. Stassis premises this claim on the fact that no action was brought until eight years after Lillith's birth and four years following Rhea's birth. To raise such a defense, a party must show that material prejudice resulted from the passage of time. *Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975). Stassis claims he was materially harmed because of the unavailability of relevant travel records during the two periods of conception and the unavailability of many witnesses. Stassis contends the travel records, which have been destroyed, would have shown he did not have sexual access to Hartman at the times Hartman claims.

The court in *Moody v. Christiansen*, 306 N.W.2d 775 (Iowa 1981) considered similar arguments before rejecting the laches claim. In *Moody*, the petitioner brought a paternity action under Iowa Code chapter 252A, claiming he was materially prejudiced by unavailable witnesses and the passage of six years. The court held, as we do here, that the respondent [here Stassis] did not show he attempted to find the witnesses and failed to show the witnesses could not have been located with due diligence. *Id.* at 777–78. More specifically in the instant case, no showing was made that one nonexcluded father, Dr. Robinson, was not available. In addition, another nonexcluded father, Dr. Klem, did testify at trial.

■ The respondent in *Moody* also claimed the passage of time caused him material harm as a result of the general difficulty of recalling events long past. The court noted that no harm resulted to the respondent since the mother recalled specific dates essential to the case, and she had the burden of proof. *Id.* In the present case, Stassis has failed to demonstrate that he was materially prejudiced. While Stassis did establish the existence of some relevant travel records from Iowa State University, he did not show the absence of other records. Stassis has failed to establish the defense of laches.

■ Next, Stassis argues his child support obligation to Lillith and Rhea should be excused because Hartman conceived these children "knowingly and intentionally ... under deceptive circumstances which [Hartman] devised so that the father of the child[ren] be unknown or uncertain so that the child[ren] can be raised in a homosexual household where the [biological] mother and her lesbian lover have established a family unit and assumed parenting roles and many years after the birth of the child recover support from an unsuspecting putative father ..." First of all, we question

the factual foundation in the record to support such a claim.

More importantly, however, the overriding public policy with respect to child support is "to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." *See* Child Support Guidelines, adopted effective December 31, 1990. It is well established that parents have a legal obligation to support their children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). The object and purpose of the laws governing the imposition of child support have authorized courts to enforce "the legal as well as moral duty of support between parent and child." *In re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973). These principles which guide the determination of child support remain the same regardless of the form of the action brought to collect it. *Moen v. McNamara*, 272 N.W.2d 438, 439 (Iowa 1978).

We can find no authority to support Stassis's suggestion that we consider the circumstances surrounding the children's conceptions or the lifestyle choices of the mother in determining paternity and child support. Accordingly, having considered Stassis's arguments as well as Hartman's cross-appeal on this issue, we affirm the district court's child support award.

Finally, Stassis argues the district court denied him his constitutionally guaranteed right of equal protection of the laws by denying his request for a jury trial. The basis of Stassis's argument is that a denial of a jury trial under chapter 252A creates an impermissible gender-based classification and is thus a violation of equal protection. In *State ex rel. Bishop v. Travis*, 306 N.W.2d 733 (Iowa 1981), the court addressed the issue of whether the denial of the right to jury trial under Iowa Code chapter 252A, when contrasted with the right to jury trial granted under Iowa Code chapter 675, is a denial of equal protection of the laws. The court held that the denial of a jury trial under chapter 252A is not a denial of equal protection. The court stated:

> Two methods to establish paternity are provided by alternative Iowa statutes. Traditional actions have long been provided by what is now chapter 675, The Code 1981. Under section 675.18, either party can demand a jury trial, a right in existence since the 1851 Code. Paternity can now also be established as an adjunct to a proceeding under chapter 252A, The Code (uniform support of dependents law). *Greenstreet v. Clark*, 239 N.W.2d 143, 147 (Iowa 1976). But where a proceeding to establish paternity is brought under chapter 252A, there is no right to a jury. *Id.* at 148. This appeal turns on whether the denial of the right under one chapter, when contrasted with the right granted under the other chapter, is a denial of equal protection of the laws. The trial court thought not and we agree.

*Bishop*, 306 N.W.2d at 734. Relying on the underlying reasoning of the *Bishop* and *Greenstreet* decisions, we reject Stassis's equal protection claim. Stassis was not denied equal protection of the laws as a result of the trial court's denial of his request for a jury trial.

Considering all of the evidence in the present case, we find the petitioners have established their claim of paternity by a preponderance of the evidence. The costs of this appeal shall be paid by the respondent, Stassis. The parties shall pay their own attorney fees.

**AFFIRMED.**