**IN THE COURT OF APPEALS OF IOWA**

No. 14-1828
Filed September 10, 2015

**UPON THE PETITION OF**
**BRIAN P. OSTRUM,**
    Plaintiff-Appellant,

**AND CONCERNING**
**AMANDA L. SHELLEY,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Dennis J. Stovall,

Judge.

Brian Ostrum appeals from a decree establishing custody, visitation, and

support. **AFFIRMED IN PART AND REMANDED.**

Jason S. Rieper, Des Moines, for appellant.

Amanda L. Shelley, Madrid, appellee pro se.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Brian Ostrum appeals from a decree establishing custody, visitation, and support for the parties' child. He contends the district court erred in (1) awarding physical care of the child to the mother, Amanda Shelley, and (2) failing to adjust his child support for extraordinary visitation and insurance premiums.

**I. Background Facts.**

Ostrum and Shelley were never married. They have one child together, P.M.M., who was born in September 2012. Shelley informed Ostrum she was pregnant and he was the father. Ostrum spent some time with the child before his paternity was established in August 2013. After he was determined to be the father, Ostrum had the child in his care every other weekend and overnight one night each week. He filed this action for custody, visitation, and support in March 2014. The parties agreed to joint legal custody but each sought physical care of the child. Ostrum and Shelley participated in a mediation session and agreed to a parenting schedule where Ostrum would have alternating weekends from Friday at 5 p.m. to Monday at 8 a.m., every Wednesday overnight, and alternating Thursday overnights following his weekend. The parties operated under this schedule for several months during which period Ostrum had the child six nights every fourteen days. The matter proceeded to trial in October 2014.

Following a trial, the district court entered a decree placing the child in Shelley's physical care, finding:

> It is undisputed that for the majority of the minor child's life, [Shelley] has been the primary care provider. By [Ostrum]'s own admission, once his paternity was established in the fall of 2013, both parties have participated in the care of their daughter. Both parents are good parents and each has their own strengths and

weaknesses. Neither party has shown the kind of stability which would warrant either one being awarded primary care with both parties changing residences in a short period of time. However, together, they have managed to provide their daughter with a sufficient nurturing environment such that she is a happy and well-balanced child. The parties had been engaged in a parenting arrangement which has worked well and that arrangement should continue. Primary care should continue with [Shelley] since it appears from the evidence that she will be better at fostering the minor child's relationship with the child's half-siblings, which this Court considers to be essential. [Ostrum] is awarded reasonable and liberal visitation. The parenting/visitation schedule set out in this Order will provide a proper balance of the same for the overall benefit of the minor child.

The parenting plan entered by the district court provides that, at a minimum, Ostrum was to have the child alternating weekends (beginning at Friday at 5:00 p.m. or after school until Monday morning at 8:00 a.m.), overnights every Thursday (5:00 p.m. or after school until Friday at 8:00 a.m.), and three weeks of summer visitation exercised in one week nonconsecutive blocks of time.

The court ordered Ostrum to pay $540 per month in child support and to maintain the child's medical/health insurance. The court found, "[Ostrum] is employed on a full-time basis. His employer provides benefits, including health insurance coverage. Brian should provide medical insurance for the minor child through his employer." Ostrum was granted the right to claim the child as a dependent on his tax returns. Ostrum appeals.

**II. Scope and Standard of Review.**

Iowa Code section 600B.40 (2013) provides that proceedings to determine visitation and custody are equitable proceedings and, therefore, our review is de novo. Iowa R. App. P. 6.907. We give deference to the district court's findings,

especially those involving the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

Shelley has not filed an appellee brief. The appellant is not entitled to automatic relief, however, as we "handle the matter in a manner most consonant with justice and [our] own convenience." *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976); *see In re Marriage of Rickels*, No. 12-1995, 2013 WL 3458173, at *2 (Iowa Ct. App. July 10, 2013). We will confine our analysis to Ostrum's objections to the trial court's ruling. *See State ex re. Buechler v. Vinsand*, 318 N.W.2d 208, 209 (Iowa 1982).

**III. Discussion.**

*A. Physical care.* Ostrum first contends the trial court erred in placing the child in Shelley's physical care. "Physical care" is defined as the "right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7). The overriding consideration in determining which parent shall have physical care of a child is the best interests of the child. *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *see also* Iowa Code § 600B.40 (stating the court is to consider the factors specified in section 598.41(3) in determining visitation and custody arrangements).

Ostrum argues his "stability and continuity demonstrate he is best equipped to have the child in his primary care." He disparages Shelley's moves and lack of employment since her discharge from the military. Upon our de novo review of the record, we agree with the trial court's finding that "both parties [have] chang[ed] residences in a short period of time."

Both parties were former military reservists and both have been deployed overseas. Shelley testified she ceased attending her weekend duties upon learning she was pregnant. She was discharged "under honorable conditions" on September 26, 2012. Shelley testified she stayed home and cared for her child and was not otherwise employed until August 2014. She works as a customer service representative earning $11.55 per hour. Shelley testified that she lived with her mother after giving birth to the child in September 2012. She has two older children from a previous marriage; those children are in the physical care of their father and they stay with Shelley every other weekend and Wednesday nights. Shelley began a relationship with her current paramour in January 2013.[1] She moved in with him (living in his mother's house in Slater, Iowa) in March 2014. Shelley testified they had just signed a one-year lease for a three-bedroom residence in Madrid, Iowa, and would be moving there the following week.

At the time of trial, Ostrum testified he had a stable and suitable two-bedroom residence in De Soto, Iowa, having moved there from Des Moines in May 2014. He stated he had been employed with the same employer for five years and currently makes $36,005 per year. He testified he had "excellent" character and Shelley "didn't have much of one." Ostrum acknowledged, however, he had been charged with several traffic violations, pled guilty to trespass and discharge of a firearm in August 2012, and pled guilty to interfering with official acts in December 2012. He also acknowledged making negative

---

[1] We give similar weight to Ostrum's complaints about the paramour's legal issues as we do to Ostrum's own legal issues.

comments about Shelley to her former husband and asking for his help prior to the custody trial to "seal the deal and screw her over."

Both parties obviously love and are capable of caring for their child. Each, in fact, testified the other was a good parent. Considering all of the factors relevant to a custody determination, we find no reason to disagree with the trial court's placement of the child in Shelley's physical care as she has been the historical primary care giver. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (noting stability and continuity in caregiving, including who was "primarily responsible for physical care," are primary factors in determining an award of physical care).

*B. Child support.* Ostrum asserts he was granted extraordinary visitation, which qualifies him for a fifteen percent reduction of his child support. It appears the district court did not consider the extraordinary visitation credit claimed by Ostrum on his child support worksheet. We remand for recalculation of Ostrum's child support obligation.

Ostrum also asserts he was not given proper credit for the amount he pays for the child's health insurance premiums. He testified: "Q. Do you know approximately or exactly what it costs you on a monthly basis just to insure [P.M.M.]? A. Not just to insure [P.M.M.]. It's $45 for myself and [P.M.M.] It's roughly 29, $30 for just myself. So around $15 a month—or a week, I'm sorry." On appeal, Ostrum contends, "when calculating child support in this matter, the Court failed to properly credit Brian for the $15 per week he pays for health insurance premiums for P.M.M.' benefit." We note, however, that Ostrum's child support worksheet filed in March 2014 states the "cost of child(ren)'s health

insurance premium" as "$0.00." In contrast, his exhibit 10 (electronically filed as exhibit 29), is a revised child support guidelines worksheet and lists the "cost of child(ren)'s health insurance premium" as "$170.00." In light of Ostrum's conflicting claims, we are not inclined to find the court erred in its child support calculation in this regard.

We affirm the decree except to the extent we remand to the district court for a consideration of extraordinary visitation credit. *See* Iowa Ct. R. 9.9.

**AFFIRMED IN PART AND REMANDED.**