# IN THE COURT OF APPEALS OF IOWA

No. 22-1107
Filed August 30, 2023

**T.M.,**
    Petitioner-Appellee,

**vs.**

**C.M.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Amy Zacharias, Judge.

A respondent appeals the grant of a sexual abuse protective order under Iowa Code chapter 236A (2022). **REVERSED AND REMANDED.**

Jon J. Narmi, Council Bluffs, for appellant.

T.M., Council Bluffs, self-represented appellee.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

Fourteen-year-old E.R. revealed that her stepfather—C.M.—touched her inappropriately. Her mother—T.M.—sought a sexual abuse protective order under Iowa Code section 236A (2022) on her daughter's behalf. Suspecting that there was "something going on in that home," the district court granted the protective order. C.M. appeals, challenging the sufficiency of the evidence to support a finding of sexual abuse. Because T.M. did not prove by a preponderance of evidence that sexual abuse occurred, we reverse the district court's ruling and remand for vacation of the protective order.

## I.    Facts and Prior Proceedings

In mid-May 2022, without an attorney, T.M. petitioned for relief from sexual abuse on behalf of her daughter, E.R. The petition alleged that in December 2020 and January 2021,

> [C.M.] touched [E.R.'s] thigh and up[per] leg rubbing close to groin/vaginal area. E.R. was wearing shorts at the time getting ready for bed. [He] touched/rubbed above/under clothing. Child was uncomfortable and didn't want to be left alone with [C.M.]. He also made sexual jokes and comments about her body. Reported to CBPD & DHS 5/13/22.

Three days later, the district court entered a temporary sexual abuse protective order. At the end of May, the court held a hearing on the petition. C.M. appeared with counsel. T.M. was self-represented. And E.R. did not attend.[1]

When T.M. started to repeat what E.R. told her about the alleged abuse, C.M.'s counsel objected on hearsay grounds. The court then asked what first-

---

[1] T.M. told the court that E.R. did not appear "by the advice of CPS"—presumably referring the child protective services division of the Iowa Department of Health and Human Services.

hand knowledge T.M. had about the events. T.M. responded: "I have seen [C.M.] make sexual comments to her as to her breasts or her buttocks. He has made comments about her thighs. I have seen him brush against her, walk in on her when she is in the shower." Under cross-examination, T.M. added: "He will pat her or put his hands on her."[2]

E.R.'s father, J.R., also testified. When he began to share what E.R. told him, C.M.'s counsel again lodged a hearsay objection. So the court asked about his first-hand knowledge. J.R. said he heard "inappropriate talking. He talks to her like, say, you would talk to a woman that you just met at a bar and flirt with sexually." J.R. added that C.M. would make comments about E.R.'s body, thinking it was "a joking thing to do." In his cross-examination, J.R. acknowledged he had not seen any inappropriate touching.

At the close of the hearing, the court explained

Obviously the testimony of [E.R.] would be very helpful given the information that was provided in the petition. And unfortunately her not being here today means that I don't have that testimony. . . . [W]hile the allegations that [E.R.] makes in the petition are not particularly before the Court in the sense that I haven't heard her testimony about them, certainly I have before me the sexual comments that are made to [E.R.] on a regular basis based upon [T.M.'s] testimony as well as what [J.R.] has heard. And [T.M's] testimony that [C.M.] goes out of the way to rub up against and if not outright touch [E.R.] in inappropriate places, certainly those two things together are enough to make me believe that there is something going on in that home more than just fun comments being made.

---

[2] T.M. also testified that she had seen C.M. put a gun to E.R.'s head and punch her in the face. After the presentation of evidence, T.M. told the court that they did not report the abuse sooner because they were afraid of C.M.

The court found "based upon the testimony here today that a no contact order should be in place between [C.M.] and [E.R.]." C.M. appeals that finding.[3]

## II.     Scope and Standard of Review

Because the district court tried this case at law, we review issuance of the protective order for the correction of legal error. *See R.M. v. D.S.*, No. 20-1375, 2021 WL 4592262, at *3 (Iowa Ct. App. Oct. 6, 2021).

## III.     Analysis

C.M. argues that T.M. did not offer enough evidence to prove that he committed an act of sexual abuse against his stepdaughter. To merit relief under chapter 236A, the petitioning person "must prove the allegation of sexual abuse by a preponderance of the evidence."[4] Iowa Code § 236A.6(1). Under this chapter, the legislature defined "sexual abuse" as the "commission of a crime defined in chapter 709 or section 726.2 or 728.12." Iowa Code § 236A.2(5).

In challenging the protective order, C.M. contends that the district court "never found a sexual abuse actually occurred." But C.M. limits his definition of sexual abuse to those "sex acts" described in Iowa Code section 702.17. We note that the definition of sexual abuse in section 236A.2(5) is broader, encompassing all crimes defined in chapter 709. Those crimes include indecent contact with a

---

[3] T.M. did not file a responsive brief. An appellee's failure to file a brief does not entitle appellant to a reversal as a matter of right. *State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208, 209 (Iowa 1982). But we will not go beyond the contested finding in search of theories on which to affirm. *Id.*

[4] A preponderance of the evidence means "superiority in weight, influence, or force." *Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist.*, 684 N.W.2d 740, 744 (Iowa 2005) (quoting *Ball v. Marquis*, 92 N.W. 691, 692 (Iowa 1902)). In other words, the allegation must be "more likely true than not true." *Holliday v. Rain & Hail L.L.C.*, 690 N.W.2d 59, 64 (Iowa 2004).

child and lascivious conduct with a minor[5]—both of which prohibit fondling or touching the victim's inner thigh, among other body parts, for sexual gratification. *See* Iowa Code §§ 709.12, 709.14. So conceivably, the acts alleged in the petition could fit within those code sections.

Trouble is, E.R. did not appear to testify to those acts. And T.M.'s first-hand observations lacked the specificity to prove acts of sexual abuse, even under the broader definition in chapter 236A. The mother testified only that C.M. would "brush against" E.R. and, at other times, would "pat her or put his hands on her." As C.M. notes on appeal, "there was no specific body part that C.M. allegedly patted or put his hands" on.

Because the record evidence was insufficient to prove sexual abuse, we reverse the district court's decision and remand for vacation of the protective order.

**REVERSED AND REMANDED.**

---

[5] C.M. contends that because E.R. was fourteen years old when her mother filed the petition, she was not a child under Iowa Code section 702.5. But she would have been thirteen years old at the time of the acts alleged in the petition.